# STATE OF MICHIGAN

# COURT OF APPEALS

DANA HARRIS,

        Plaintiff-Appellee,

and

STAR BRIGHT IMAGE GROUP, LLC, doing
business as OAK PARK IMAGING, SILVER
PINE IMAGING, LLC, and ALWAYZ ON TIME
TRANSPORTATION,

        Intervening Plaintiffs,

and

MENDELSON ORTHOPEDICS, PC, and
SYNERGY SPINE AND ORTHOPEDIC
CENTER, LLC,

        Intervening Plaintiffs-
        Appellees/Cross-Appellants,

v

TERRY GERALD BOOKER,

        Defendant,

and

PIONEER STATE MUTUAL INSURANCE
COMPANY,

        Defendant/Cross-Defendant-
        Appellant/Cross-Appellee,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant/Cross-Plaintiff-Appellee.

UNPUBLISHED
December 14, 2017

No. 332764
Macomb Circuit Court
LC No. 2014-002049-NI

-1-

PIONEER STATE MUTUAL INSURANCE
COMPANY,

        Plaintiff-Appellant,

and

OAK PARK IMAGING,

        Plaintiff,

v

VANETTA WRIGHT, DANA REYNARD
HARRIS, and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

        Defendants-Appellees,

and

MENDELSON ORTHOPEDICS, PC, and
SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER, LLC,

        Intervening Defendants-Appellees.

No. 335025
Macomb Circuit Court
LC No. 2015-002978-CZ

Before: TALBOT, C.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

These consolidated appeals involve claims arising under the no-fault act, MCL 500.3101 *et seq*., in connection with injuries Dana Harris sustained in a motor vehicle accident. In Docket No. 332764, Pioneer State Mutual Insurance Company ("Pioneer") appeals by leave granted the trial court's grant of partial summary disposition in favor of Harris and its grant of summary disposition in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). The trial court's summary disposition decisions were based upon its determination that Harris was a resident relative domiciled in the home of Pioneer's insured, Vanetta Wright, on the date of the accident underlying the lawsuit, as well as its application of the innocent-third party rule with respect to Harris. Mendelson Orthopedics, PC, and Synergy Spine and Orthopedic Surgery Center, LLC (collectively "the provider plaintiffs") cross-appeal the trial court's denial of their motions for summary disposition. We affirm the trial court's denial of the provider plaintiffs' motions for summary disposition and its determination that Harris was a resident relative domiciled with Wright. However, we reverse the portion of the court's order applying the innocent third-party rule to Harris and remand for further proceedings.

In Docket No. 335025, Pioneer appeals as of right the trial court's order summarily disposing of Pioneer's separate complaint for declaratory relief on the basis of laches. We

reverse the trial court's grant of summary disposition in Pioneer's declaratory relief action and remand for further proceedings.

## I. BACKGROUND

On September 13, 2013, Harris was injured in a motor vehicle accident while riding as a passenger in an automobile owned by Laurie Francen. Francen's car was covered by a policy issued by State Farm. Harris did not own a vehicle or have a no-fault insurance policy at the time of the accident and, therefore, sought personal protection insurance (PIP) benefits from Pioneer under a policy it issued to Harris's mother, Vanetta Wright.

On May 20, 2014, after Pioneer failed or refused to pay PIP benefits to Harris, he filed a complaint against Pioneer and the driver of the other vehicle involved in the accident. Harris later amended his complaint in March 2015 to add State Farm as a defendant. The provider plaintiffs intervened in the action, seeking to recover the amounts owing to them for treatment of Harris's accident-related injuries. State Farm also brought a cross-claim against Pioneer, asserting that Pioneer was responsible for Harris's PIP benefits as the first in priority insurer under the no-fault statutory scheme.[1]

In August 2015, Pioneer initiated a separate declaratory relief action, seeking rescission of the insurance policy it issued to Wright. Pioneer averred that by failing to identify Harris as a resident of her household when she applied for insurance in April 2013, she made a material misrepresentation that warranted rescission of the policy. State Farm was permitted to intervene as a defendant in that action, as were the provider plaintiffs.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition.[2] "A motion made under MCR 2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[3] The Court considers "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party . . . ."[4] "A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue upon which reasonable minds could differ."[5]

---

[1] State Farm also sought recovery of the amounts it paid to the provider plaintiffs.

[2] *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010).

[3] *Id*. (citations omitted).

[4] *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 437; 824 NW2d 318 (2012) (quotation marks and citation omitted).

[5] *Nuculovic*, 287 Mich App at 62.

This Court also reviews a trial court's equitable decisions de novo, but the findings of fact supporting an equitable decision are reviewed for clear error.[6] "A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made."[7]

## III. HARRIS'S RESIDENCY

Pioneer first argues that the trial court erred by holding that Harris was a resident relative domiciled in Wright's household on September 13, 2013, thereby making Pioneer the priority insurer with respect to payment of Harris's PIP benefits. We disagree.

MCL 500.3114 governs the priority of insurers under the no-fault act.[8] Subject to exceptions that are not implicated in this case, MCL 500.3114 provides that "a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident."[9] Thus, "the no-fault insurance policies for the injured person's household are first in order of priority of responsibility for payment of no-fault benefits . . . ."[10] In the absence of such a policy, the injured person may look elsewhere for coverage as otherwise provided in MCL 500.3114. Pertinent to this instant matter is subsection (4), which states:

> Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied.[11]

Thus, if the trial court correctly determined that Harris was a resident relative domiciled with Wright, then Pioneer is the insurer of highest priority under MCL 500.3114(1). If, on the other hand, Harris was not domiciled with Wright, then State Farm, as the insurer of the vehicle Harris occupied at the time he was injured, would be the insurer of highest priority under MCL 500.3114(4).

---

[6] *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008).

[7] *Id*.

[8] *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 254; 819 NW2d 68 (2012).

[9] MCL 500.3114(1).

[10] *Corwin*, 296 Mich App at 255 (quotation marks and citation omitted).

[11] MCL 500.3114(4).

Although determination of a claimant's domicile generally involves a question of fact, it becomes a question of law for the court to decide when the underlying facts are undisputed.[12] In determining domicile, the following factors should be weighed or balanced:

> (1) the subjective or declared intent of the claimant to remain indefinitely in the insured's household, (2) the formality of the relationship between the claimant and the members of the household, (3) whether the place where the claimant lives is in the same house, within the same curtilage, or upon the same premises as the insured, and (4) the existence of another place of lodging for the person alleging domicile.[13]

Additionally, when a child's purported domicile with a parent is at issue, as it is here, the court should also consider

> (1) whether the child continues to use the parents' home as the child's mailing address, (2) whether the child maintains some possessions with the parents, (3) whether the child uses the parents' address on the child's driver's license or other documents, (4) whether a room is maintained for the child at the parents' home, and (5) whether the child is dependent upon the parents for support.[14]

While the parties disagree concerning the significance of the facts pertaining to Harris's domicile, the facts themselves are not in dispute. At all relevant times, Wright resided in an apartment in Warren. When she submitted an application for insurance to Pioneer in April 2013, she did not identify Harris as a driver or resident in her household. Additionally, Harris's information on file with the Secretary of State at the time of the accident reflected an address in Macomb. The same Macomb address was listed on the police report from the accident, as well as personnel records provided by Harris's part-time employer. Although these facts suggest that Harris did not reside with Wright, a review of the remaining evidence clearly weighs in favor of finding that Harris was, in fact, domiciled with Wright at the time of the accident.

In a recorded interview with Pioneer representative Fred Jernigan on October 14, 2013, Wright indicated that Harris moved into her apartment around December 2012. Jernigan noted that Wright had opened a bedroom door and showed him the inside of Harris's bedroom. According to Wright, Harris received some, but not all, of his mail at the Warren apartment. Jernigan also spoke to Shawnie McMichael Brown, who resided at the Macomb address reflected on Harris's identification. During Jernigan's December 5, 2013 conversation with Brown, Brown explained that Harris had lived with her for approximately three years until they ended their relationship around the end of summer in 2012. Brown believed that Harris had moved into Wright's apartment, as she visited him there occasionally after they broke up. Brown indicated that Harris took all of his belongings when he moved out of her home and he no longer received

---

[12] *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364; 656 NW2d 856 (2002).

[13] *Id*.

[14] *Id*. at 364-365.

mail there.  Additionally, Harris provided Wright's Warren address on a medical treatment intake form dated September 19, 2013.

When he was deposed in July 2015, Harris testified that he moved from Brown's Macomb residence to Wright's Warren apartment in September or October 2012.  He had his own bedroom and bed at Wright's apartment and intended to stay there, though he did not formally change his address through the postal service.  Harris further testified that he had no other place to live.  He received, and was responsible for, a cable bill at the Warren apartment, but Wright paid the rent and utility bills and bought him personal items such as deodorant and socks.  Harris testified that when he left Brown's Macomb residence he had no intention of going back.

Wright testified consistent with her previous recorded statement, though she provided additional details concerning her living arrangements with Harris.  When Harris moved in around November or December of 2012, he brought all of his clothing, kept his toothbrush and personal items in the bathroom, and received mail at the apartment.  Harris told her he would be living with her for a while and she intended that he could remain with her as long as he wanted.  Harris helped with the rent and groceries when he was working, but she paid most of the bills and supported him.  Wright testified that she did not disclose that Harris was living with her when she applied for insurance because she took care of her own business, he did not drive her car, and she did not intend to let him drive it.

Even viewing the evidence in the light most favorable to Pioneer, the trial court did not err by finding that Harris was a resident of Wright's household at the time of the accident.  The evidence demonstrates that Harris, Wright's biological son, had a subjective and declared intent to remain indefinitely in Wright's household.  Wright, too, intended that Harris could live with her for as long as he needed.  Harris did not have any other place of lodging at the time and was at least partially dependent on Wright for financial support.  Harris had his own bedroom at Wright's apartment, maintained his belongings there, and received mail there.  These facts weigh heavily in favor of finding that Harris was domiciled in Wright's household, and the trial court did not err in concluding so.  Pioneer's position to the contrary relied primarily on Harris's address on file with the Secretary of State, which we find unpersuasive in light of the remaining evidence suggesting that Harris had lived with Wright for approximately 10 months before the accident.  As the trial court aptly observed, "[Harris]'s failure to update his address with the Secretary of State and his employer does not detract from the essentially uncontroverted evidence which demonstrates that [Harris] was then residing with [his] mother, and intended to so remain."

## IV.  INNOCENT-THIRD PARTY RULE

Next, Pioneer argues that the trial court erred by finding that Harris was entitled to PIP benefits from Pioneer under the innocent third-party doctrine.  We agree.

In response to Harris's motion for partial summary disposition, Pioneer maintained that if Harris resided in Wright's household, Wright made a material misrepresentation on her application for insurance when she failed to list him as a driver or resident.  Thus, argued Pioneer, it was entitled to rescind Wright's policy and declare it void *ab initio*.  Without ruling

on Pioneer's right to rescind the policy, the trial court acknowledged that Wright's failure to identify Harris in her insurance application "could arguably be seen as an intentional misrepresentation." However, noting Pioneer's failure to present any evidence suggesting that Harris participated in Wright's purported fraud, the court concluded that Harris, as an innocent third-party, would still be entitled to PIP benefits from Pioneer.

Regardless of the propriety of the trial court's ruling at the time it was made, this Court has since examined, and rejected, the applicability of the innocent third-party rule in the context of a no-fault insurance contract. Summarizing its holding in *Bazzi v Sentinel Ins Co*, the Court explained,

> (1) there is no distinction between an easily ascertainable fraud rule and an innocent-third-party rule, (2) the Supreme Court in *Titan* [*Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012)] clearly held that fraud is an available defense to an insurance contract except to the extent that the Legislature has restricted that defense by statute, (3) the Legislature has not done so with respect to PIP benefits under the no-fault act, and (4) the judicially created innocent-third-party rule has not survived the Supreme Court's decision in *Titan*. Therefore, if an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void *ab initio* and rescind it, *including denying the payment of PIP benefits to innocent third parties*.[15]

Given the *Bazzi* Court's unequivocal rejection of the rationale relied on by the trial court in this case—i.e., that Harris could recover PIP benefits from Pioneer regardless of whether Pioneer could rescind its policy on the basis of Wright's purported fraud—the portion of the trial court's order relying on the innocent third-party rule must be reversed. Additionally, because the trial court declined to directly address whether Wright's policy was voidable, we remand for further proceedings.

## V. LACHES

Next, Pioneer argues that the trial court erred by applying the equitable doctrine of laches to its declaratory action seeking rescission of Wright's policy. We agree.

"If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches."[16] For the doctrine of laches to apply, there must be an unreasonable delay that results in "circumstances that would render inequitable any grant of relief to the dilatory plaintiff."[17] It is

---

[15] *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 781-782; 891 NW2d 13 (2016) (opinion by SAWYER, J), lv gtd 500 Mich 990 (2017) (emphasis added).

[16] *Knight v Northpointe Bank*, 300 Mich App 109, 114; 832 NW2d 439 (2013).

[17] *Twp of Yankee Springs v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004) (quotation marks and citation omitted).

"triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time."[18]  Additionally, laches does not apply unless prejudice to the other party results from the unreasonable delay.[19]

There is little doubt that Pioneer did delay in attempting to rescind Wright's insurance policy in this matter.  Within approximately one month of the accident, Pioneer had reason to believe that Wright had misrepresented the residents of her household when she applied for insurance.  On October 13, 2013, Wright indicated that Harris resided with her at the time of the accident and even showed Pioneer's representative Harris's bedroom.  Harris's former girlfriend, the occupant of the Macomb residence appearing on Harris's identification and employment records, corroborated Wright's assertions in December 2013, agreeing that Harris had moved into Wright's apartment in 2012.  Moreover, it is evident that Pioneer understood the implications of Harris's residency.  In an October 15, 2013 email, a Pioneer agent observed, "If we do not have enough strength to rescind this policy (Dana Harris will argue that he is an innocent third party), we need to assign a PIP adjuster to the file."  Thus, it is clear that nearly two years before Pioneer filed its action for declaratory relief, it was well aware of Wright's alleged misrepresentation, its potential ability to rescind the policy, and Harris's likely defense.

However, given the state of the law during the pendency of the lower court proceedings, we do not believe that Pioneer's delay was unreasonable or inexcusable.  Pioneer cancelled Wright's policy shortly after the accident due to nonpayment and, thus, had little reason to seek rescission while Michigan courts continued to apply the innocent third-party rule to PIP claims.  It was not until June 2016, when this Court concluded in *Bazzi* that an insurer could deny PIP benefits to an innocent third party if the underlying policy had been procured through fraud, that Pioneer had cause to rescind Wright's policy so as to avoid liability for Harris's PIP benefits.  Following this development in the law, Pioneer acted with diligence in asserting its right to rescind Wright's policy by initiating its declaratory relief action on August 18, 2015.  While we acknowledge that Harris was likely prejudiced as a result of this delay—the one-year back rule set forth in MCL 500.3145(1) may preclude recovery of a significant portion of Harris's claim against another insurer—laches should not be applied in the absence of an unreasonable delay.[20]  Accordingly, we reverse the trial court's order dismissing Pioneer's declaratory relief action on the basis of laches.

## VI.  PROVIDER CLAIMS

---

[18] *Attorney General v PowerPick Player's Club of Mich, LLC*, 287 Mich App 13, 51; 783 NW2d 515 (2010).

[19] *Twp of Yankee Springs*, 264 Mich App at 612.

[20] *Id.* at 611 ("The doctrine of laches is concerned with unreasonable delay . . . .").  See also *Regents of Univ of Mich v State Farm Mut Ins Co*, 250 Mich App 719, 734; 650 NW2d 129 (2002) (stating that laches requires proof of a lack of diligence on the part of the plaintiff), overruled in part on other grounds by *Covenant Med Ctr, Inc v State Farm Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017).

Lastly, the provider plaintiffs cross-appeal the trial court's denial of their motions for summary disposition with respect to their claims for expenses incurred in Harris's care and recovery. They further contend that the trial court erred in failing to award them interest for overdue benefits under MCL 500.3142 and attorney fees under MCL 500.3148(1).

Although the parties have not submitted supplemental briefing as to this issue, we note that, once again, recent developments in the field of no-fault law are dispositive of this issue. In *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, our Supreme Court conclusively held that a healthcare provider possesses no statutory right to sue a no-fault insurer.[21] The Court found that while MCL 500.3112 undoubtedly provides that no-fault insurers can directly pay healthcare providers for the benefit of an injured person, it does not "grant healthcare providers a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person."[22] Moreover, this Court has also determined that *Covenant Med Ctr*'s rejection of direct provider claims is to be given full retroactive effect.[23] In light of this development, the provider plaintiffs in this case do not have a statutory entitlement to proceed with their action for no-fault benefits against Pioneer and, it follows, no claim to statutory interest and fees for overdue benefits under the no-fault act. Accordingly, we affirm the trial court's order denying the provider plaintiffs' motions for summary disposition, albeit on different grounds.[24]

## VII. CONCLUSION

In Docket No. 332764, we affirm the trial court's denial of the provider plaintiffs' motions for summary disposition and its determination that Harris was a resident relative domiciled with Wright. However, in light of this Court's holding in *Bazzi*,[25] we reverse the portion of the court's order applying the innocent third-party rule to Harris and remand this matter for further proceedings. We also reverse the trial court's grant of summary disposition in Docket No. 335025 and remand for further proceedings.

We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Stephen L. Borrello
/s/ Michael J. Riordan

---

[21] *Covenant Med Ctr*, 500 Mich at 196.

[22] *Id*. at 195-196.

[23] *W A Foote Mem Hosp v Mich Assigned Claims Plan*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 333360); slip op at 19.

[24] See *Zdrojewski v Murphy*, 254 Mich App 50, 70-71; 657 NW2d 721 (2002) (explaining that this Court will not reverse a trial court's decision when the correct result was reached).

[25] *Bazzi*, 315 Mich App at 781-782 (opinion by SAWYER, J).