SAWYER, P. J.
We are asked in this case to determine whether the so-called “innocent third party” rule, which this Court established in State Farm Mut Auto *768 Ins Co v Kurylowicz,[1] survived our Supreme Court’s decision in Titan Ins Co v Hyten.[2] We conclude that it did not.
Plaintiff, Ali Bazzi (plaintiff), is seeking to recover personal protection insurance (PIP) benefits for injuries he sustained in an automobile accident while driving a vehicle owned by third-party defendant Hala Bazzi (plaintiffs mother).[3] Intervening plaintiffs, Genex Physical Therapy, Inc., Elite Chiropractic Center, PC, and Transmedic, LLC, are healthcare providers who provided services to plaintiff as a result of those injuries and are seeking payment for those services. The vehicle driven by Bazzi was insured under a commercial automobile policy issued by defendant Sentinel Insurance to Mimo Investments, LLC.[4] Sentinel maintains that the policy was fraudulently procured by Hala Bazzi and third-party defendant Mariam Bazzi (plaintiffs sister and the resident agent for Mimo Investments) in order to obtain a lower premium because of plaintiffs involvement in a prior accident. Sentinel maintains that the vehicle was actually leased to Hala Bazzi for personal and family use, not for commercial use by Mimo, and, in fact, that Mimo was essentially a shell company, which had no assets or employees or was not otherwise engaged in actual business activity. Sentinel also alleges as fraud that the third-party defendants failed to disclose plaintiff would be a regular driver of the vehicle. In fact, *769 Sentinel pursued a third-party complaint against Hala and Mariam Bazzi, seeking to rescind the policy on the basis of fraud in the application.[5]
Sentinel thereafter moved for summary disposition of plaintiffs claim against Sentinel for PIP benefits, as well as the intervening plaintiffs’ claims because the policy was rescinded on the basis of fraud. The trial court denied the motion, concluding that plaintiff had a claim because of the innocent-third-party rule.[6] Sentinel sought leave to appeal in this Court, which we denied.[7] Sentinel then sought leave to appeal in the Supreme Court, which, in lieu of granting leave, remanded the matter to this Court for consideration as on leave granted.[8] We now reverse the decision of the trial court and remand the matter for further proceedings consistent with this opinion.
The standard of review to be applied here was set forth, as follows, in Titan:[9]
This Court reviews de novo a trial court’s decision on a motion for summary disposition. Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp, 486 Mich 311, 317; 783 NW2d 695 (2010). In addition, the proper interpretation of a statute is a question of law that this Court reviews de novo. Eggleston v Bio-Med Applications of Detroit, Inc, 468 Mich 29, 32; 658 NW2d 139 (2003). The proper interpretation of a contract is also a question of law that this Court reviews de novo. Rory v Continental Ins Co, 473 Mich 457, 464; 703 NW2d 23 (2005).
*770 Resolution of this case begins and ultimately ends with our Supreme Court’s decision in Titan. Although Titan did not involve a no-fault insurance claim for PIP benefits, we nonetheless are convinced that Titan compels the conclusion that the innocent-third-party rule does not apply to a claim for those benefits. That is, if an insurer is entitled to rescind a no-fault insurance policy because of fraud, it is not obligated to pay any benefits under that policy, including PIP benefits to a third party innocent of the fraud.
In Titan, the insurer sought a declaratory judgment on the basis that, because of fraud in the application, it had no duty to indemnify its insureds in a claim brought by third parties injured in an automobile accident with Titan’s insureds.[10] The injured parties and their insurer maintained that Titan could not avoid liability to the innocent third parties because the fraud was easily ascertainable. While this Court agreed because of our earlier decision in Kurylowicz, the Supreme Court disagreed and overruled Kurylow-icz and its progeny.[11]
Plaintiff and defendant Citizens argue that the decision in Titan does not apply to this case for two reasons: Titan did not involve mandatory PIP benefits, and it only considered the “easily ascertainable fraud” rule and not the “innocent third party” rule. These are the essential arguments in this case because if Titan does not apply here, then there is binding precedent of this Court in which we applied the innocent-third- *771 party rule to no-fault PIP cases.[12] On the other hand, if Titan does apply, then we are certainly obligated to follow a recent Supreme Court decision over an older decision of this Court. But, after careful analysis, we are not persuaded that either of these arguments provides a basis for distinguishing Titan, and therefore we conclude that Sentinel is not obligated to pay no-fault benefits to plaintiff if Sentinel establishes that the policy was procured by fraud.
We first consider whether there is a distinction between the easily-ascertainable-fraud rule discussed in Titan and the innocent-third-party rule advanced in this case. We conclude that they are one and the same.
While Titan consistently referred to the easily-ascertainable-fraud rule set forth in Kurylowicz, it and the so-called innocent-third-party rule are not separate and distinct rules. As stated by the Titan Court:
The principal question presented in this case is whether an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, when the fraud was easily ascertainable and the claimant is a third party.[13]
Therefore, the focus of Titan was not merely on the ascertainability of the fraud; it was also relevant that the case involved a third-party claimant. Indeed, the substance of Kurylowicz was that both conditions had to apply before the insurer was prevented from raising a fraud defense. This point was recognized by the Supreme Court in Titan when it observed that “when it is the insured who seeks benefits under an insurance *772 policy procured through fraud, even an easily ascertainable fraud will not preclude an insurer from availing itself of traditional legal and equitable remedies to avoid liability.”[14]
In sum, Titan recognized that the rule in Kurylowicz only applied if the fraud was easily ascertainable and involved an innocent third party. Moreover, it would make no sense to conclude that an insurer has no liability if the fraud is easily ascertainable, but would retain liability if the fraud was not easily ascertainable.[15] Accordingly, “easily ascertainable” and “innocent third party” are merely two different labels for the same rule, and we cannot dismiss the application of Titan merely by applying the “innocent third party” label to this case and then pointing out that Titan dealt with the “easily ascertainable fraud” rule. That is, in rejecting the easily-ascertainable-fraud rule, the Supreme Court of necessity also rejected the innocent-third-party rule because they are, in fact, the same rule.
Furthermore, even if the decision in Kurylowicz has evolved into two separate rules—the easily-ascertainable-fraud rule and the innocent-third-party rule—it is irrelevant. Both these rules have their roots in the Kurylowicz decision. And Titan clearly overruled Kurylowicz “and its progeny . .. .”[16] Moreover, this point is farther supported by the fact that one of the cases explicitly overruled by Titan was this Court’s decision *773 in Ohio Farmers Ins Co v Mich Mut Ins Co.[17] While Titan did state that Ohio Farmers was overruled to the extent it held “that an insurer is estopped from denying coverage on the basis of fraud when it could have easily ascertained the fraud,”[18] the discussion in Ohio Farmers regarding its reliance on Kurylowicz focused on the claimant being an innocent third party.[19] In fact, Titan cited Ohio Farmers for the proposition that “it is contended that the ‘easily ascertainable’ rule is required for the protection of third parties.”[20] Yet, the quotation from Ohio Farmers cited by Titan referred not to the fraud being easily ascertainable, but to an insurer being estopped from rescinding a policy when an innocent third party has been injured.[21] This then brings us back to our earlier point: that the easily-ascertainable-fraud rule and the innocent-third-party rule are one and the same. An overruling of Ohio Farmers of necessity overrules the innocent-third-party rule.
We now turn to the other question posed in this case, whether the holding in Titan extends to mandatory no-fault benefits. We conclude that it does. Titan involved optional benefits not mandated by statute. But that was not the basis of the Court’s decision. And it made the rather unremarkable observation that when insurance benefits are mandated by statute, coverage is governed by that statute.[22] It is also true that “because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an *774 insurance policy, unless those defenses are prohibited by statute.”[23] The Court ultimately held “that an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party.”[24] And it did so without qualification regarding whether those benefits were mandated by statute. Therefore, if there is a valid policy in force, the statute controls the mandated coverages. But the coverages required by law are simply irrelevant when the insurer is entitled to declare the policy void ab initio. The situation would be akin to if the automobile owner had never obtained an insurance policy in the first place; the owner would have been obligated by law to obtain coverage, but failed to do so.
Thus, the question is not whether PIP benefits are mandated by statute, but whether that statute prohibits the insurer from availing itself of the defense of fraud. And the parties are unable to identify a provision in the no-fault act itself in which the Legislature statutorily restricts the use of the defense of fraud with respect to payment of PIP benefits. That is, the one argument under Titan that would carry the day for the appellees simply does not exist. And the Legislature was certainly aware that it could do so as it had already done so with respect to the financial responsibility act.[25]
*775 This leads us to a related argument raised by Citizens: that Titan is inapplicable because it dealt with the financial responsibility act, which is not at issue here. Citizens misconstrues the discussion in Titan regarding MCL 257.520. While MCL 257.520 was somewhat central to the Court’s analysis in Titan, the Court carefully analyzed that statute to dismiss prior decisions that had concluded it applied to all liability insurance policies; the Court concluded that the MCL 257.520(f)(1) limitation on the fraud defense does not apply to all automobile insurance policies. Titan[26] analyzed this point as follows:
Several appellate decisions of this state have suggested that MCL 257.520 applies to all liability insurance policies. For example, in State Farm Mut Auto Ins Co v Sivey, 404 Mich 51, 57; 272 NW2d 555 (1978), this Court indicated that MCL 257.520(b)(2) applies to “all policies of liability insurance[.]” (Emphasis added.) In addition, in Farmers Ins Exch v Anderson, 206 Mich App 214, 220; 520 NW2d 686 (1994), the Court of Appeals indicated that “when an accident occurs in this state, the scope of liability coverage is determined by the financial responsibility act.” See also League Gen Ins Co v Budget Rent-A-Car of Detroit, 172 Mich App 802, 805; 432 NW2d 751 (1988) (“When an accident occurs in this state, the scope of the liability coverage required in an insurance policy is determined by Michigan’s financial responsibility act].]”). However, none of these decisions undertook a close analysis of this issue.
We have closely reviewed MCL 257.520(f)(1), and we believe that the statute does not in every case limit the ability of an automobile insurer to avoid liability on the ground of fraud; its reference to “motor vehicle liability policy” is not all encompassing. Rather, as used in MCL 257.520(f)(1), “motor vehicle liability policy” refers only to an “owner’s or an operator’s policy of liability insurance, *776 certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility ... MCL 257.520(a). Thus, absent this certification, MCL 257.520(f)(1) has no relevant application. Further, MCL 257.520(f)(1) refers only to “the insurance required by this chapter,” (emphasis added), and the only insurance required by chapter V of the Michigan Vehicle Code is insurance “certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility ....” MCL 257.520(a). Therefore, as we stated in Burch v Wargo, 378 Mich 200, 204; 144 NW2d 342 (1966), MCL 257.520 “applies only when ‘proof of financial responsibility for the future’... is statutorily required . . ..” See also MCL 257.522 (“This chapter shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state ....”); and State Farm Mut Auto Ins Co v Ruuska, 412 Mich 321, 336 n 7; 314 NW2d 184 (1982) (“[I]n discussing the requisites for an automobile liability policy issued as proof of future financial responsibility, the Legislature [in MCL 257.520(b)], after requiring an owner’s policy to designate by explicit description or appropriate reference all covered motor vehicles, limited the liability coverage to only those automobiles listed in the policy by speaking in terms of the use of ‘such’ vehicle(s).”). For these reasons, we now clarify that MCL 257.520(f)(1) does not apply to a motor vehicle liability insurance policy unless it has been certified under MCL 257.518 or MCL 257.519 and, to the extent that Sivey, Anderson, and League suggest otherwise, they are overruled.
This is an important point. Titan specifically established that MCL 257.520(f)(1) only restricts the fraud defense as to coverage required under Chapter V of the vehicle code.[27] It also explains why it is not relevant whether a coverage is mandatory because it is only relevant whether the Legislature has restricted the availability of the fraud defense with respect to a particular coverage.
*777 Therefore, it is necessary to determine exactly to what coverage the restrictions of MCL 257.520(f)(1) apply. First, it only restricts application of the fraud defense to coverage required in Chapter V. As discussed in the above quotation from Titan, the only insurance coverage required in Chapter V is the proof of financial responsibility under MCL 257.518 and MCL 257.519. And that proof of financial responsibility is only required to prevent the suspension of the license, registration, and nonresident driving privileges of a person against whom there is an unsatisfied judgment as defined in Chapter V.[28] Therefore, unless the insured in this case had an outstanding, unsatisfied judgment—and there is no indication that this is the case—then the provisions of MCL 257.520 would simply not apply. This is in contrast to MCL 500.3101 of the no-fault act, which requires that the owner or registrant of a motor vehicle driven on a highway carry certain insurance coverages, including residual liability insurance. And under MCL 500.3131 and MCL 500.3009, the minimum limits are similar to that required under the financial responsibility act. But unlike the provisions of the financial responsibility act, those statutory sections do not restrict the availability of the fraud defense.[29]
Citizens argues that MCL 257.520(f)(1) “only provides authority for policy cancellation or annulment as to the ‘insured’ ” and, therefore, the “statute has absolutely no application to the claim of Ali Bazzi in the instant action, and makes the Titan v. Hyten opinion, again, completely distinguishable.” While Citizens is *778 correct that MCL 257.520 is inapplicable to this case, it misses the point of the discussion of the statute in Titan. It is not, as Citizens’ argument would suggest, that MCL 257.520 must apply for the insurer to deny coverage. Rather, it underscores that MCL 257.520(f)(1), or a similar statute, must apply in order to preclude the insurer from denying coverage because of fraud.
Next, Citizens argues that public policy requires us to retain the innocent-third-party rule. But this argument ignores the Supreme Court’s criticism of this Court’s reliance on public policy in Kurylowicz when justifying the easily-ascertainable-fraud rule. In Titan,[30] the Court had this to say on the topic:
First, Kurylowicz justified the “easily ascertainable” rule on the basis of its understanding of the “public policy” of Michigan. In light of the Legislature’s then recent passage of the no-fault act, MCL 500.3101 et seq., Kurylo-wicz reasoned that
the policy of the State of Michigan regarding automobile liability insurance and compensation for accident victims emerges crystal clear. It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void ab initio after injury covered by the policy occurs. [.Kurylowicz, 67 Mich App at 574.]
This “public policy” rationale does not compel the adoption of the “easily ascertainable” rule. In reaching its conclusion, Kurylowicz effectively replaced the actual provisions of the no-fault act with a generalized summation of the act’s “policy.” Where, for example, in Kurylowicz’s state *779 ment of public policy is there any recognition of the Legislature’s explicit mandate that, with respect to insurance required by the act, “no fraud, misrepresentation,. .. or other act of the insured in obtaining or retaining such policy. . . shall constitute a defense” to the payment of benefits? MCL 257.520(f)(1). We believe that the policy of the no-fault act is better understood in terms of its actual provisions than in terms of a judicial effort to identify some overarching public policy and effectively subordinate the specific details, procedures, and requirements of the act to that public policy. In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and Kurylowicz’s efforts to elevate some of its provisions and some of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature. The no-fault act, as with most legislative enactments of its breadth, was the product of compromise, negotiation, and give-and-take bargaining, and to allow a court of this state to undo those processes by identifying an all-purpose public policy that supposedly summarizes the act and into which every provision must be subsumed, is to allow the court to act beyond its authority by exercising what is tantamount to legislative power. Third-party victims of automobile accidents have a variety of means of recourse under the no-fault act, and it is to those means that such persons must look, not to a judicial articulation of policy that has no specific foundation in the act itself and was designed to modify and supplant the details of what was actually enacted into law by the Legislature.
The policy concerns raised by Citizens may well have merit. But it is for the Legislature, and not this Court, to determine whether there is merit to those concerns and, if so, the appropriate remedy. While the Legislature might conclude that the appropriate response is to create an innocent-third-party rule, it may choose to address the issue differently. While we can envision any number of policy issues, as well as solutions to those issues, we are judges, not legisla *780 tors. It is for the Legislature, not this Court, to consider these issues and determine what response, if any, represents the best public policy. We decline the invitation to legislate into existence an innocent-third-party rule that, thus far, the Legislature has chosen not to adopt.
For these reasons, we conclude the trial court erred by denying summary disposition to Sentinel based on the trial court’s erroneous conclusion that the innocent-third-party rule remained viable after our Supreme Court’s decision in Titan. However, we must decide the appropriate disposition of this matter. Sentinel argues that it is entitled to have summary disposition entered in its favor because a default judgment was entered against Hala and Mariam Bazzi, which rescinded the insurance policy. Citizens argues that that default judgment only operates as a determination against those two parties and not against it or Ali Bazzi. It does not appear that the trial court ultimately resolved this question; therefore, we conclude that the trial court should first address this question on remand.
Accordingly, we remand the matter to the trial court. On remand, there are two questions before the trial court. First, it must determine whether the default judgment against Hala and Mariam Bazzi conclusively established fraud, which would provide a basis for Sentinel to rescind the policy as to all parties, or whether the remaining parties are entitled to litigate the issue of fraud. Next, the trial court must determine whether there is a genuine issue of material fact regarding the fraud issue. If the trial court determines either of those questions in favor of Sentinel, it shall enter summary disposition in favor of Sentinel. If the *781 trial court rules against Sentinel on both of those questions, then it shall deny summary disposition.[31]
In sum, regardless whether there is one rule or two, and whether we consider a case involving liability coverage or PIP benefits, it all leads back to Kurylow-icz, and the Supreme Court in Titan overruled Kurylo-wicz because Kurylowicz ignored the Supreme Court’s decision in Keys v Pace,[32] which had arguably itself involved easily ascertainable fraud and an innocent third party.[33] Accordingly, we conclude that: (1) there is no distinction between an easily-ascertainable-fraud rule and an innocent-third-party rule, (2) the Supreme Court in Titan clearly held that fraud is an available defense to an insurance contract except to the extent that the Legislature has restricted that defense by statute, (3) the Legislature has not done so with respect to PIP benefits under the no-fault act, and (4) the judicially created innocent-third-party rule has not survived the Supreme Court’s decision in Titan. Therefore, if an insurer is able to establish that a no-fault *782 policy was obtained through fraud, it is entitled to declare the policy void ab initio and rescind it, including denying the payment of PIP benefits to innocent third parties.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Sentinel may tax costs.
Boonstra, J., concurred with Sawyer, P.J.

 67 Mich App 568; 242 NW2d 530 (1976).

 491 Mich 547; 817 NW2d 562 (2012).

 Plaintiff is seeking PIP benefits under the no-fault act, MCL 500.3101 et seq. See MCL 500.3105 (insurer liability) and MCL 500.3107 (allowable expenses).

 Defendant Citizens Insurance Company’s involvement and potential liability in this case is as the servicing insurer under the Michigan Assigned Claims Plan. See MCL 500.3172(1).

 The trial court entered a default judgment against the third-party defendants in favor of Sentinel.

 At this point we assume, without deciding, that plaintiff is, in fact, innocent of the fraud.

 Bazzi v Sentinel Ins Co, unpublished order of the Court of Appeals, entered May 21, 2014 (Docket No. 320518).

 Bazzi v Sentinel Ins Co, 497 Mich 886 (2014).

 491 Mich at 553.

 Titan, 491 Mich at 551-552. Titan acknowledged that it was obligated to indemnify its insureds for the minimum liability coverage of $20,000 per person/$40,000 per occurrence required under the financial responsibility act, MCL 257.501 et seq. Id. at 552 n 2.

 Id. at 550-551.

 See, e.g., Lake States Ins Co v Wilson, 231 Mich App 327; 586 NW2d 113 (1998).

 491 Mich at 560.

 Id. at 564.

 Indeed, applying such a conclusion to this case would lead to the rather bizarre result that Sentinel could deny liability if it can demonstrate that the fraud committed by the Bazzis was easily ascertainable, but not if the fraud was more difficult to establish.

 Titan, 491 Mich at 551, 573.

 179 Mich App 355; 445 NW2d 228 (1989).

 Titan, 491 Mich at 551 n 1.

 Ohio Farmers, 179 Mich App at 363-365.

 Titan, 491 Mich at 568.

 Id. at 568 n 11.

 Id. at 554.

 Id. (emphasis added).

 Id. at 571.

 See MCL 257.520(f)(1) (providing in part that “no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy.. . shall constitute a defense as against such judgment creditor”).

 491 Mich at 558-560.

 MCL 257.501 through MCL 257.532.

 MCL 257.512 and MCL 257.513.

 This also rebuts the suggestion that the insurer would be liable for $20,000 per person/$40,000 per occurrence in PIP benefits. The provisions of the financial responsibility act are simply inapplicable to no-fault benefits or other coverages required under the no-fault act.

 491 Mich at 564-566 (bracketed citation in original).

 We acknowledge that, based on a statement made by the trial court at the motion hearing, it seems likely the trial court will rule in Sentinel’s favor regarding whether there is a genuine issue of material fact on the issue of fraud. Specifically, the trial court stated as follows:
So if the inquiry ended right there you would say that, I’ve already made the determination that Hala Bazzi was fraud, so you would say, you would agree, we would all agree that the contract is rescinded, you would say rescinded with a period right there. [Emphasis added.]
It can certainly be argued that the trial court has already resolved this point and merely went on to hold that the policy cannot be rescinded as to Ali Bazzi solely because of the innocent-third-party rule. Nonetheless, we are not quite prepared to determine that the trial court definitively resolved the issue; therefore, remand is necessary.

 358 Mich 74; 99 NW2d 547 (1959).

 See id. at 84.