# STATE OF MICHIGAN

# COURT OF APPEALS

MARIA D. ENRIQUEZ and CLAUDIA
HERNANDEZ,

        Plaintiffs-Appellees,

and

MICHIGAN PAIN MANAGEMENT and
MEDICAL TRANSPORTATION, LLC,

        Intervening Plaintiffs-Appellees

and

SOUTHWEST MICHIGAN IMAGING
SERVICES, LLC,

        Intervening Plaintiff,

v

JOSE LUIS RIOS-CARRANZA and CORY
ALAN GUERRA,

        Defendants,

and

EVEREST NATIONAL INSURANCE
COMPANY,

        Defendant-Appellant.

UNPUBLISHED
March 20, 2018

No. 336128
Wayne Circuit Court
LC No. 15-013208-NI

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

In the midst of this first-party no-fault action, Everest National Insurance Company notified Maria Enriquez that it was rescinding her insurance policy and sent her a refund check for the full premium paid. Enriquez cashed the check, thereby accepting the rescission of her policy. This meant that Enriquez accepted that she had no insurance coverage at the time of her

-1-

accident. Given Enriquez's acceptance, the circuit court should have dismissed plaintiffs' and intervening plaintiffs' claims against Everest. We reverse.

## I. BACKGROUND

On May 4, 2015, Enriquez visited Fiesta Auto Insurance Agency and applied for a no-fault policy from Everest. The application warned, "ALL HOUSEHOLD MEMBERS AGE 14 OR OLDER, INCLUDING BUT NOT LIMITED TO SPOUSE(S), ROOMMATE(S), CHILDREN, FAMILY MEMBERS AND WARDS MUST BE LISTED AS POTENTIAL DRIVERS. . . . YOUR TOTAL POLICY PREMIUM CAN BE AFFECTED BY THIS INFORMATION." Despite that Enriquez lived with her boyfriend and her 15-year-old daughter, she listed only herself as a potential driver on the application. An "applicant questionnaire" within the application queried, "Have you identified on this application all members of your household who are over the age of 14?" Enriquez marked the box for "yes." The applicant was not permitted to select "no" as that option was marked "unacceptable," another warning that listing all potential drivers was a prerequisite to coverage.

The application ended with a section labeled "APPLICANT'S STATEMENT-READ BEFORE SIGNING." By signing, Enriquez acknowledged:

> I agree that if I intentionally conceal or misrepresent a material fact or circumstance relating to the insurance, the policy shall be null and void. . . . I certify that all household members age 14 or older, including but not limited to spouse(s), roommate(s), children, family members and wards have been listed as potential drivers. . . . I understand that my total policy premium could be affected by this information.

Six days later, Enriquez was in a motor vehicle accident and filed a claim for first-party no-fault benefits. When Everest did not provide benefits in a timely fashion, Enriquez and Claudia Hernandez (Enriquez's adult daughter who was a passenger during the accident) filed suit. During depositions, Enriquez and Hernandez admitted that Enriquez lived with her boyfriend and her 15-year-old daughter at all relevant times.

On June 14, 2016, a third-party claims administrator for Everest notified Enriquez through her attorney that the no-fault policy was "hereby rescinded" and therefore "nullifie[d] . . . as if it never existed" because Enriquez failed to list her teenage daughter as a potential driver on her application, an omission that artificially reduced her policy premium by $1,481.00. A check for $650.88 was included with the rescission notification, "which is a refund of the policy premium." Similar notice was sent to Hernandez through counsel. Enriquez cashed the check on June 29.

Even before it rescinded the policy, Everest defended the suit based on Enriquez's misrepresentation in the application. On June 23, 2016, after Everest sent the rescission notification but before Enriquez cashed the refund check, Everest filed a motion for summary disposition. In that motion, Everest noted that it had "rescinded Ms. Enriquez's policy and issued a premium refund check to her." Given the rescission, Everest contended that Enriquez did not have coverage at the time of her accident and the derivative claims of Hernandez and the

-2-

intervening plaintiffs who provided services and treatment also must fail. By the time Everest replied to Enriquez's oppositional brief, Enriquez had cashed the premium refund check. Accordingly, Everest added to its argument that Enriquez accepted and ratified the rescission and was therefore estopped from contesting the rescission.

Ultimately, the circuit court denied Everest's summary disposition motion because Enriquez could not speak English and because the applicant questionnaire did not allow an applicant to reply "no" when asked whether she listed all potential drivers in the application, giving her "no way . . . to truthfully answer the question."

Everest now appeals.

## II. ANALYSIS

We review de novo a circuit court's ruling on a summary disposition motion. *Johnson v Recca*, 492 Mich 169; 173; 821 NW2d 520 (2012).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotation marks and citations omitted).]

Here, the circuit court should have dismissed the claims of plaintiffs and intervening plaintiffs because Everest rescinded the insurance policy and Enriquez accepted the rescission.

In *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938), the Michigan Supreme Court adopted the description of rescission provided by 1 Black, Rescission and Cancellation (2d ed), § 1:

> "To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo*."

The other party's acceptance of the return of the consideration it paid toward the contract creates a "mutual agreement" or mutual "assent" to rescind the contract and excuses all the duties and

rights flowing from that contract. 13 Corbin, Contracts (rev ed), § 67.8, pp 47-49; 29 Williston, Contracts (4th ed), § 69:50, pp 119-121, § 73:15, pp 48-49. The endorsement and cashing of a check represents one party's acceptance of the other party's terms. See *Puffer v State Mut Rodded Fire Ins Co of Mich*, 259 Mich 698, 702; 244 NW 206 (1932) ("The failure of the parties to make a verbal agreement of settlement, separate from the indorsement on the check, is not of consequence."); *DMI Design & Mfg, Inc v ADAC Plastics, Inc*, 165 Mich App 205, 210; 418 NW2d 386 (1987) ("In this case, plaintiff's action in negotiating the check speaks louder than plaintiff's words."); *Fuller v Integrated Metal Tech, Inc*, 154 Mich App 601, 614; 397 NW2d 846 (1986) (in which the plaintiff's claims were precluded because he endorsed and cashed a check tendered by the defendant in settlement of the parties' disagreement).

Everest mailed the rescission notice and premium refund check to Enriquez's attorney. This return of consideration restored the status quo. The circuit court erred in failing to consider this argument in its ruling denying Everest's motion for summary disposition. As the contract was legally rescinded, plaintiffs and intervening plaintiffs no longer had any ground to pursue suit against Everest.[1]

We reverse.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel

---

[1] Everest's rescission of the insurance contract serves to eliminate Hernandez's and the intervening plaintiffs' claims as well, despite that they made no misrepresentation to the insurance company. See *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 770; 891 NW2d 13 (2016) ("[I]f an insurer is entitled to rescind a no-fault insurance policy because of fraud, it is not obligated to pay any benefits under that policy, including PIP benefits to a third party innocent of the fraud.")