*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOHAMED MM ALSHABI,

        Plaintiff/Counterdefendant-
        Appellee,

v

JOHN DOE,

        Defendant,

and

MICHIGAN ASSIGNED CLAIMS PLAN,

        Defendant/Third-Party Plaintiff-
        Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant,

v

DT METRO SEDAN, INC., DETROIT METRO
AIRPORT CARS, INC., JAVED IQBAL,
MUDDASAR JAVED, and MUZZAMAL
JAVED,

        Third-Party Defendants.

UNPUBLISHED
January 23, 2020

No. 346700
Wayne Circuit Court
LC No. 17-001916-NI

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

-1-

Auto Club Insurance Association (ACIA) appeals as of right the trial court's final judgment awarding damages to plaintiff, Mohamed MM Alshabi, under the no-fault act, MCL 500.3101 *et seq*. While ACIA appeals from the trial court's final judgment, the issue raised on appeal is the trial court's earlier denial of ACIA's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal stems from a motor vehicle accident that occurred late in the evening of October 19, 2016. Plaintiff was driving a vehicle owned by Javed Iqbal, and insured with ACIA, when another car—driven by an unknown motorist—crashed into the driver's side of Iqbal's vehicle. At the time of the accident, plaintiff was without personal automobile insurance. On January 25, 2017, plaintiff filed a complaint seeking personal protection insurance (PIP) benefits, under the no-fault act, MCL 500.3101 *et seq*., from ACIA and the Michigan Assigned Claims Plan (MACP). Plaintiff also made a negligence claim against the unknown motorist.

A little less than a year after plaintiff filed his complaint, ACIA filed a motion for summary disposition, arguing that it was not liable to plaintiff for PIP benefits. In its motion, ACIA asserted that the vehicle plaintiff was driving the night of the accident was, in fact, part of the fleet Iqbal used for his transportation business. However, when Iqbal insured the vehicle with ACIA, he stated it was only for personal use. According to ACIA, this misrepresentation rendered the insurance policy void from the outset and excused ACIA from any obligations it might have to plaintiff. After briefing by the parties and a hearing, the trial court denied ACIA's motion, concluding that a factual dispute existed regarding the status and use of the vehicle at issue, and noting that the ACIA had not taken steps to rescind its agreement with Iqbal. After the trial court's denial of its first motion for summary disposition, ACIA mailed a letter to Iqbal stating that it was rescinding the insurance policy because it had determined Iqbal misrepresented the intended use for the vehicle. A few days later, ACIA mailed Iqbal a check refunding the insurance premium. Iqbal cashed the check.

ACIA then filed a second motion for summary disposition. In support of its motion, the ACIA argued that it had brought about a mutual rescission of the insurance policy by mailing the letter and refunding Iqbal's premium and that Iqbal had consented to the rescission by cashing the check. Because a mutual rescission returns the parties to the position they occupied before any contract being formed, argued ACIA, there was no policy under which plaintiff could claim PIP benefits. For a second time, the parties briefed the issue and a hearing was held. In its written opinion and order denying the ACIA's motion, the trial court stated it was relying on our Supreme Court's decision in *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018) and concluded that ACIA was not "automatically entitled to rescind policies" as they apply to third parties, even when fraud is involved. The trial court went on to state that the ACIA's rescission of the insurance policy did not alter its obligation to plaintiff, and that the equities of this case did not warrant rescission of the policy as it concerned plaintiff.

After the trial court's denial of ACIA's second motion for summary disposition, ACIA and plaintiff reached an agreement on the amount of benefits at issue, making a trial unnecessary. However, the ACIA still asserted that it was not liable to pay those benefits. The trial court issued a final judgment in favor of plaintiff and against ACIA, awarding plaintiff

$139,000 in first-party no-fault benefits and $85,000 in uninsured motorist benefits. This appeal followed. We affirm.

## II. STANDARD OF REVIEW

The ACIA moved for summary disposition under MCR 2.116(C)(10). This Court reviews de novo a trial court's decision on a motion for summary disposition. *Defrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366; 817 NW2d 504 (2012).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotation marks and citations omitted).]

Similarly, this Court reviews questions of statutory and contractual interpretation de novo. *Bazzi*, 502 Mich at 398 (citation omitted).

## III. ANALYSIS

We begin by noting that although the ACIA is appealing the trial court's final order granting judgment to plaintiff, the content of ACIA's appeal is concerned with the trial court's earlier denial of ACIA's second motion for summary disposition.[1] On appeal, the ACIA asserts that the mutual rescission of its insurance agreement with Iqbal left the trial court without a contract to enforce concerning plaintiff's PIP benefits. As a result, the trial court erred in not granting the ACIA's motion for summary disposition. We disagree.

It is helpful, at the outset, to have some clarity concerning the question upon which this appeal turns. MCL 500.3114(4) provides, in pertinent part:

> a person who suffers accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who is not covered under a personal protection insurance policy as provided in subsection (1) shall claim personal protection insurance benefits under the assigned claims plan under sections 3171 to 3175.

---

[1] "Where a party has claimed an appeal from a final order, that party is free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992).

The parties in this case do not dispute that plaintiff did not have a no-fault insurance policy at the time of the accident, or that plaintiff was not covered by a resident relative's policy. Nor is it disputed that plaintiff is entitled to PIP benefits. Rather the question is concerned with whether the ACIA can be held liable to pay those benefits. Answering this question depends on the trial court's interpretation and implementation of our Supreme Court's decision in *Bazzi*, 502 Mich at 390.

The facts of *Bazzi* are similar to those in this case. The plaintiff was injured while driving a motor vehicle owned and insured by his mother. *Id*. at 396. The *Bazzi* plaintiff sued for PIP benefits; however, in a situation the reverse of what is alleged in this case, the plaintiff's mother had leased the vehicle personally but obtained a commercial insurance policy, listing her sister's company as the insured party. *Id*. at 396-397. The insurance company claimed that the plaintiff's mother had obtained the insurance policy through fraud and subsequently "obtained a default judgment rescinding the policy." *Id*. at 397. After receiving the default judgment, the insurance company moved for summary disposition, asserting that "rescission of the policy rendered it void ab initio and precluded recovery under the policy." *Id*.

Our Supreme Court's decision in *Bazzi* articulated two principles, the latter of which has a bearing on this case. First, the *Bazzi* Court affirmed an insurance company's right to raise the defense of fraud against enforcement of an insurance agreement and the ability to rescind that agreement as against the insured party as a means of remedying that fraud. *Id*. at 406. Such a decision, the *Bazzi* Court noted, would abrogate the insurance policy and return the parties "to the relative position that they would have occupied if the contract had never been made." *Id*. at 409, citing *Wall v Zynda*, 283 Mich 260, 264-265; 278 NW 66 (1938). Second, and more significantly, our Supreme Court went on to state that this did not create an "automatic right [to rescind the policy] with respect to third parties." *Bazzi*, 502 Mich at 411. Rather, under those circumstances, rescission was concerned with principles of equity and fell within the trial court's discretion. *Id*. at 409. Applying these principles, the *Bazzi* Court recognized that the insurance policy between the plaintiff's mother and the insurance company was void from its beginning. Yet, our Supreme Court still required the trial court to weigh the equities and determine whether rescinding the policy was an appropriate remedy in that case. *Id*. at 412.

This Court recently provided guidance on implementing *Bazzi*'s principles in *Mendelson Orthopedics, PC v Everest Nat'l Ins Co*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 341013); slip op at 6. Like *Bazzi*, the facts of *Mendelson Orthopedics* are comparable to this case. The intervening-plaintiff was a passenger in a vehicle owned and insured by another party when the vehicle was rear-ended and the intervening-plaintiff was injured. *Id*. at__; slip op at 2. After the vehicle owner's insurance company refused to pay PIP benefits, the intervening-plaintiff sued, claiming he was entitled to benefits under the owner's insurance policy. *Id*. The insurance company moved for summary disposition, arguing it had rescinded the insurance policy because of a misrepresentation by the owner, which made the policy void from the beginning and precluded the intervening-plaintiff from recovering under the policy. *Id*. The trial court agreed that the insurance company had the right to rescind the policy and granted the motion. *Id*. at ___; slip op at 3.

After reviewing the trial court's decision against the principles articulated in *Bazzi*, however, this Court reversed the trial court's grant of summary disposition. *Id*. at ___; slip op at

-4-

6. While recognizing the insurance company's right to rescind the policy as against the insured party who procured the fraud, this Court stated that, nevertheless, the insurance company was "not automatically entitled to rescission as between all parties by operation of law." *Id*. This Court noted that, before rescinding the policy as it concerned the intervening-plaintiff—a party innocent of the fraud—the trial court was required by *Bazzi* to weigh the equities of the case and determine if they precluded the insurance company from relying on the defense of fraud against the intervening-plaintiff's claims. *Id*.

As in this case, in both *Bazzi* and *Mendelson Orthopedics*, insurance companies validly rescinded insurance policies due to misrepresentations by the insured parties—although in this case, with Iqbal's consent—and the insurance companies then asserted the rescission as a defense to a claim made by an innocent third party. Both this Court and our Supreme Court have concluded that, under such circumstances, the next step is for the trial court to determine whether the insurance company's claim that the contract is void and unenforceable concerning the third party is justified by the equities of the case. Our review of the record indicates that the trial court in this case followed that exact procedure in denying ACIA's second motion for summary disposition, and ACIA has provided no argument or analysis to suggest that we should disturb the court's balancing of the equities.

Additionally, in light of the above analysis, we conclude that ACIA's attempt to distinguish *Bazzi* with reference to *Enriquez v Rios-Carranza*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2018 (Docket No. 336128), is without merit. While ACIA acknowledges that this Court's unpublished decision in *Enriquez* is not binding precedent under MCR 7.215(C)(1), it still relies on the decision for the principle that a mutual rescission renders an insurance policy void from the beginning. *Enriquez*, unpub op at 3-4. And, if analysis of ACIA's claim ended there, it might prevail. However, the ACIA understates the extent to which this Court's decision in *Enriquez* relied on this Court's decision in *Bazzi* before its reversal by our Supreme Court. In *Enriquez*, this Court stated the nullification of an insurance contract by mutual rescission extended against all parties, not just the insurer and the insured. However, this extension, at least in part, relied on the principle stated by this Court that "if an insurer is entitled to rescind a no-fault insurance policy because of fraud, it is not obligated to pay any benefits under that policy, including PIP benefits to a third party innocent of the fraud." *Enriquez*, unpub op at 4 n 1, quoting *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 770; 891 NW2d 13 (2016), aff'd in part and rev'd in part 502 Mich 390 (2018). After our Supreme Court's decision in *Bazzi*, that statement is no longer true. It is a logical outgrowth of *Bazzi* that, when an insurance company validly rescinds an insurance agreement as against the insured party because of misrepresentation, a trial court must determine whether the equities of the case allow that rescission to be effective against a third party.

ACIA also offers a significant amount of caselaw from other jurisdictions to support its assertion that a mutual rescission of an insurance contract exists when an insurer mails the insured party a letter rescinding the contract and refunds the insurance premium. "Although judicial decisions from foreign jurisdictions are not binding" on this Court, they can be considered for their persuasive value. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006). However, we conclude that the out-of-state authority offered in this case is unpersuasive. ACIA offers the authorities as support for the rule that a mutual rescission occurred in this case; however, there is no dispute that such a rescission occurred. As a result,

ACIA expends a significant amount of space in its brief and argument on a point that is not in dispute. More significantly though, the issue in this appeal—as briefed by the parties—is the effect of that rescission on the ACIA's liability to plaintiff. This question is one that is governed uniquely by our law, because of the insurance contract's interaction with Michigan's no-fault act, and the interpretation of that statutory scheme by both this Court and our Supreme Court. And, the guidance provided by both tribunals is clear: when an insurer exercises its right and validly rescinds an insurance agreement against an insured party on the basis of that party's misrepresentation, this does not automatically affect a rescission of the agreement concerning a third party. After such a rescission, a trial court is required to balance the equities of rescinding the obligations of the contract as they exist between the insurer and a third party. In this case, the trial court followed this guidance and did not err in denying the ACIA's motion for summary disposition.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford

-6-