*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONNIE MOUSSA EL-ACHKAR,

        Plaintiff,

and

OAKWOOD HEALTHCARE, INC., PHYSIOMATRIX, INC., GENEX PHYSICAL THERAPY, INC., ELITE CHIROPRACTIC CENTER, PC, and PRIME CARE CHIROPRACTIC, PC,

        Intervening-Plaintiffs,

v

SENTINEL INSURANCE COMPANY, LTD.,

        Defendant/Third-Party Plaintiff-
        Appellant,

and

HARTFORD INSURANCE COMPANY OF ILLINOIS,

        Defendant,

and

HALA BAYDOUN BAZZI and MARIAM BAZZI,

        Third-Party Defendants,

and

CITIZENS INSURANCE COMPANY,

        Appellee.

UNPUBLISHED
December 3, 2020

No. 348380
Wayne Circuit Court
LC No. 13-005965-NI

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

Defendant-Third-Party Plaintiff-Appellant, Sentinel Insurance Company, Ltd. (Sentinel) appeals by right the trial court's final order requiring it to reimburse Defendant-Appellee Citizens Insurance Company (Citizens) the amount it paid plaintiff Ronnie El-Achkar to settle his claims for no-fault benefits. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

El-Achkar suffered injuries as a passenger in a motor vehicle accident on August 8, 2012, that occurred near the Ford Road and Mercury Drive intersection in Dearborn. A white Honda driven by El-Achkar's friend, Ali Bazzi, traveled over 100 miles per hour on westbound Ford Road and collided with a black Dodge pickup that had lawfully completed a left turn onto the roadway. Ali and El-Achkar were ejected from the Honda. Ali and El-Achkar each suffered injuries and sought PIP benefits from Sentinel, the insurer of the Honda. In *Bazzi v Sentinel Ins Co* (*Bazzi I*), 315 Mich App 763, 768-769; 891 NW2d 13 (2016), aff'd in part and rev'd in part *Bazzi v Sentinel Ins Co* (*Bazzi II*), 502 Mich 390; 919 NW2d 20 (2018) (footnote omitted), this Court summarized the pertinent facts as follows:

> Plaintiff, Ali Bazzi (plaintiff), is seeking to recover personal protection insurance (PIP) benefits for injuries he sustained in an automobile accident while driving a vehicle owned by third-party defendant Hala Bazzi (plaintiff's mother).[] Intervening plaintiffs, Genex Physical Therapy, Inc., Elite Chiropractic Center, PC, and Transmedic, LLC, are healthcare providers who provided services to plaintiff as a result of those injuries and are seeking payment for those services. The vehicle driven by Bazzi was insured under a commercial automobile policy issued by defendant Sentinel Insurance to Mimo Investments, LLC.[4]
>
> ---
> [4] Defendant Citizens Insurance Company's involvement and potential liability in this case is as the servicing insurer under the Michigan Assigned Claims Plan. See MCL 500.3172(1).
>
> ---
>
> Sentinel maintains that the policy was fraudulently procured by Hala Bazzi and third-party defendant Mariam Bazzi (plaintiff's sister and the resident agent for Mimo Investments) in order to obtain a lower premium because of plaintiff's involvement in a prior accident. Sentinel maintains that the vehicle was actually leased to Hala Bazzi for personal and family use, not for commercial use by Mimo, and, in fact, that Mimo was essentially a shell company, which had no assets or employees or was not otherwise engaged in actual business activity. Sentinel also alleges as fraud that the third-party defendants failed to disclose plaintiff would be a regular driver of the vehicle. In fact, Sentinel pursued a third-party complaint against Hala and Mariam Bazzi, seeking to rescind the policy on the basis of fraud in the application.[5]

Sentinel thereafter moved for summary disposition of plaintiff's claim against Sentinel for PIP benefits, as well as the intervening plaintiffs' claims because the policy was rescinded on the basis of fraud. The trial court denied the motion, concluding that plaintiff had a claim because of the innocent-third-party rule.

In the *Bazzi* case, Sentinel sought summary disposition but the trial court denied the motion which prompted Sentinel to seek leave to appeal that decision to this Court which denied leave.[1] Sentinel then sought leave to appeal to our Supreme Court which, in lieu of granting leave, remanded the case to this Court for consideration as on leave granted.[2] Because our Supreme Court directed this Court to hear Sentinel's appeal, the parties in this case stipulated to the entry of an order staying further proceedings pending the resolution of Sentinel's pending appeal in the *Bazzi* case.

On remand of Sentinel's appeal in the *Bazzi* case, this Court reversed the trial court's ruling and held that Sentinel could rescind the policy covering the vehicle in which Ali and El-Achkar were injured because of fraud in the policy's procurement, and therefore, Sentinel had no obligation to pay PIP benefits for Ali, an innocent third party to the policy fraud. *Bazzi I*, 315 Mich App at 767-769. Ali appealed this Court's decision to our Supreme Court to consider "whether the judicially created innocent-third-party rule, which precludes an insurer from rescinding an insurance policy procured through fraud when there is a claim involving an innocent third party, survived [our Supreme] Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), which abrogated the judicially created easily-ascertainable-fraud rule." *Bazzi II*, 502 Mich at 396. Our Supreme Court held "that *Titan* abrogated the innocent-third-party rule but that the Court of Appeals erred when it concluded that Sentinel was automatically entitled to rescission in this instance." *Id*. Our Supreme Court affirmed in part, reversed in part, and remanded to the trial court to consider whether, in its discretion, rescission is an available remedy. *Id*.

Following remand of the *Bazzi* case, the trial court in this case ordered a *Bazzi* hearing and required interested parties to file briefs and appear for the hearing. Sentinel moved to rescind its insurance policy and Citizens opposed Sentinel's motion. The trial court held a hearing on Sentinel's motion on February 28, 2019.

In the *Bazzi* case, after conducting the equitable balancing directed by our Supreme Court in *Bazzi II*, the trial court entered a final order that its previous decision rescinding the Sentinel policy would not change and remained effective resulting in holding Sentinel not responsible for

---

[1] See *Bazzi v Sentinel Ins Co*, unpublished order of the Court of Appeals entered May 21, 2014 (Docket No 320518).

[2] See *Bazzi v Sentinel Ins Co*, 497 Mich 886; 854 NW2d 897 (2014).

any claims made by Ali. The trial court ordered further that Sentinel not reimburse Citizens or any Michigan Automobile Insurance Placement Facility for any claims related to Ali.

After the hearing, the trial court ordered the stay lifted in this case, and it entered a final order ruling that the equities weighed against Sentinel in the balancing of the equities analysis prescribed by our Supreme Court in *Bazzi II*, ordered Sentinel responsible for El-Achkar's no-fault claims, and ordered Sentinel to reimburse Citizens $125,000, the amount that Citizens paid to settle El-Achkar's claims. Sentinel now appeals.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to grant or deny a motion for rescission of an insurance contract. *Bazzi II*, 502 Mich at 409. An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). An abuse of discretion necessarily occurs when the trial court makes an error of law. *Id*. The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

## III. ANALYSIS

Sentinel argues that, because it validly rescinded its no-fault insurance policy because of Hala's fraudulent procurement of it, the policy was void *ab initio* as to all claimants for PIP benefits under it, requiring no balancing of the equities as between Sentinel and El-Achkar, and if equities balancing was required, the trial court erred by ruling that the equities favored El-Achkar so that Sentinel's rescission did not apply to him. We disagree.

The burden of establishing a right to rescission lies with the party seeking rescission. *Gardner v Thomas R Sharp & Sons*, 279 Mich 467, 469; 272 NW 871 (1937). In *Mendelson Orthopedics PC v Everest Nat'l Ins Co*, 328 Mich App 450, 458-460; 938 NW2d 739 (2019) (quotation marks and citations omitted), this Court analyzed *Bazzi II* and explained that our Supreme Court reaffirmed the right of insurers to raise common law defenses such as fraud in the procurement to seek rescission of a no-fault insurance policy to avoid liability, but clarified that insurers are not categorically entitled to rescission because "a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court, and when a party seeks rescission, the trial court must balance the equities to determine whether the party is entitled to the relief it seeks." In *Mendelson*, this Court faced a factual scenario very similar to this case. A third party sought PIP benefits from a no-fault insurer that discovered its insured had procured a policy through fraud, and the insured then rescinded the policy. *Id*. at 461. This Court explained that *Bazzi II* confirmed that an insurer may rescind and treat a policy as void *ab initio* as between the insurer and the insured; however, *Bazzi II* directed that, "when two equally innocent parties are affected, the court is required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss[.]" *Id*. at 460 (quoting *Bazzi II*, 502 Mich at 410) (quotation marks and citations omitted). In *Mendelson*, this Court determined that the trial court appropriately recognized the insurer's right to rescind the policy and treat it as void *ab initio* respecting the insured, but the trial court failed to hold a hearing and to balance the equities as between the injured third party and the insurer which required a distinct and separate

-4-

analysis. Consequently, this Court reversed and remanded to the trial court for further proceedings to balance the equities as between the injured third party and the insurer. *Id*. at 462.

In *Pioneer State Mutual Ins Co v Wright*, ___ Mich App ___, ___; ___ NW2d ___ (2020), slip op at 2-3, lv application pending, a case involving an injured third party who sought PIP benefits under a no-fault insurance policy procured by a family member who made a material misrepresentation in her application for insurance, this Court again addressed the issue of the balancing of the equities as between two innocent parties, the insurer and the injured third party. To facilitate its review and clarify how courts must balance the equities, this Court adopted and distilled the essence of JUSTICE MARKMAN'S five-factor test stated in his concurrence in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018) (MARKMAN, J., concurring), as follows:

> Reduced to their essence, five factors were identified and they address: (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id*. at ___, slip op at 7.]

This Court considered and applied the five-factor test. *Id*. at ___, slip op at 8-9. This Court explained that "[b]alancing the equities is not concerned with laying blame, but determining which of the innocent parties should bear a loss." *Id*. at ___, slip op at 9, citing *Bazzi II*, 502 Mich at 411. This Court concluded that the "trial court's analysis was specific to the facts and circumstances of the case and went no farther than what was equitable. Therefore, we cannot conclude that the trial court abused its discretion by refusing to grant rescission." *Id*.

In this case, application of the five-factor test to the facts supports the trial court's decision. The trial court properly considered the equities as between Sentinel and El-Achkar and correctly ruled that Sentinel failed to carry its burden of establishing the right to rescind the policy as between Sentinel and El-Achkar.

Respecting the first factor, whether Sentinel could have uncovered the fraud before El-Achkar sustained injury, the record reflects that Sentinel issued the subject policy on April 29, 2012, to Mimo Investments, LLC for commercial coverage for a one-year period based on payment of a $3,467 premium to cover three vehicles including the Honda involved in the August 8, 2012 accident, without conducting any real investigation regarding the company, the ownership of the insured vehicles, or who the intended drivers of the vehicles would be. The record does not reflect that Sentinel engaged in any investigation after issuance of the policy up to the time of the accident. Whether investigation before the accident would have revealed the fraud is unclear from this record and the perpetrators of the fraud may have been able to keep the truth concealed from Sentinel. The record reveals, however, that after the accident Sentinel investigated and discovered the fraud without much difficulty because Ali drove the Honda involved in the accident. The trial court

concluded that Sentinel could have done more to discover the fraud before the accident. We do not find that the trial court clearly erred in this regard, but because the perpetrators of the fraud may have concealed their subterfuge from Sentinel we conclude that this factor neither weighs for nor against rescission.

Regarding the second factor, whether the injured third party had a relationship with the fraudulent insured, the record reflects that El-Achkar had no relationship with Hala, Mariam, or Mimo Investments, LLC, and he had no knowledge of the fraud. El-Achkar lacked a familial relationship with any of Ali's family and knew nothing about the procurement of the subject insurance policy. This factor, therefore, favors El-Achkar and weighs against rescission of the policy as between him and Sentinel.

The third factor also weighs against rescission of the policy as between El-Achkar and Sentinel. The record reflects that Ali drove the vehicle and picked up El-Achkar to go to a bakery for something to eat around midnight. No evidence in the record indicates that El-Achkar acted recklessly or negligently in the injury causing event. The record establishes that El-Achkar rode as a passenger in the Honda and lacked control over the ensuing events including the crash caused by Ali's reckless driving.

Respecting the fourth factor, the record reflects that El-Achkar lacked another insurance policy under which he could claim no-fault benefits. He had no insurance policy of his own. El-Achkar sued Hartford, the insurer of his father's vehicle, after his claim for benefits had been denied, apparently believing that he could claim benefits from that policy. His father's vehicle, however, was covered under a commercial insurance policy that did not cover family members residing in the family household.[3] The fourth factor, therefore, weighs against rescission.

Sentinel argues that El-Achkar is entitled to recover through the Michigan Assigned Claims Plan (MACP)/Michigan Automobile Insurance Placement Facility under MCL 500.3171 *et seq*., and this fact should be considered in the equities balancing if its proposed two-factor test is not adopted by this Court. Under *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 251; 293 NW2d 594 (1980), however, our Supreme Court explained that "before recovery of benefits may be obtained through an assigned claims plan, it must be determined that no personal protection insurance is 'applicable to the injury'." Further, as explained by this Court in *Spectrum Health Hosp v Michigan Assigned Claims Plan*, 330 Mich App 21, 31-32; 944 NW2d 412 (2019):

> the "owner or registrant of a motor vehicle required to be registered in this state" to purchase PIP insurance to cover injuries to persons caused by motor vehicles. MCL 500.3101(1). The Legislature provided that the policies required under MCL 500.3101(1) must cover more than just the named insured; policies must also cover injuries incurred in motor vehicle accidents by the named individual's spouse and any relative of either domiciled in the same household. MCL 500.3114(1). When an injured person is not covered by his or her own insurance policy or a policy owned by a relative, the Legislature provided that the insurers of the various

---

[3] The record indicates that, similar to the subject policy in this case, the commercial policy covering El-Achkar's father's vehicle may have been procured by fraud and subject to rescission.

vehicles involved or occupied during the accident, or the insurers of persons operating such vehicles, must cover the loss. See MCL 500.3114(2) through (5); MCL 500.3115. Even when there does not appear to be any applicable PIP coverage, the Legislature provided that an injured person could obtain PIP benefits through the MACP. See MCL 500.3172(1). All self-insurers or insurers writing insurance as provided by the no-fault insurance act are required to participate in the MACP, with the associated costs being "allocated fairly among insurers and self-insurers." MCL 500.3171(2). In this way, the Legislature ensured that every person injured in a motor vehicle accident would have access to PIP benefits unless one of the limited exclusions in the no-fault act applies, and the losses suffered by uninsured persons injured in motor vehicle accidents could be indirectly passed on to the owners and registrants of motor vehicles through insurance premiums.

*Belcher* and *Spectrum Health* make clear that the MACP provides coverage as a last resort. Therefore, only if El-Achkar was not otherwise covered by a no-fault policy against which he could make a claim would he be eligible to seek coverage through the MACP. The equities balancing test as between an insurer and injured third party determines whether an injured third party may claim coverage under a no-fault policy. That determination, therefore, must be made first before the injured third party may seek coverage provided by the MACP. Accordingly, the fact that an injured third person can seek PIP benefits from the MACP as a last resort should not and cannot be factored into the equities balancing test's fourth-factor inquiry because that factor would be rendered nugatory since the availability of coverage under the MACP if considered would always require concluding that the factor favors rescission. Accordingly, the availability of coverage through the MACP should not be considered as part of the five-factor test adopted by this Court in *Pioneer*. Sentinel's argument, therefore, lacks merit.

The fifth factor requires consideration whether policy enforcement only serves to relieve the fraudulent insured of personal liability to the innocent third party. JUSTICE MARKMAN explained in his concurrence in *Farm Bureau* that courts conducting equities balancing must determine:

> whether enforcement of the insurance policy would subject the insurer to coverage for tort liability for an at-fault insured. In such a case, equity may weigh in favor of rescission because enforcement of the policy would transfer liability to the innocent third party from the insured who committed the fraud to the insurer that did not commit wrongdoing. [*Farm Bureau*, 503 Mich at 906.]

In this case, Ali constituted the party at fault for the accident's occurrence because of his reckless driving. Ali was not insured under the commercial policy issued to Mimo Investments, LLC even if that policy had not been procured through fraud by Hala and Mariam. Enforcement of the policy would not transfer Ali's tort liability to El-Achkar from the insured, Mimo Investments, LLC, to the innocent insurer. Further, the record reveals that the insured, Mimo Investments, LLC, was nothing more than a shell company with no assets or employees and was formed primarily to perpetrate the fraud. Even if El-Achkar sued the LLC and Ali for tort liability, it is doubtful that he could obtain any relief. Under the circumstances presented in this case, the fifth factor weighs against rescission.

Weighing the equities between Sentinel and El-Achkar under the five-factor test adopted in *Pioneer* establishes that the equities weigh against rescission. The record reflects that the trial court considered the five factors and, although it did not fully articulate its reasoning, found that the factors weighed against rescission. Further, it gave Sentinel an opportunity to persuade it otherwise but Sentinel failed to do so. The trial court essentially found that Sentinel could have done a better job of investigating and uncovering the fraud of the LLC, and it found that, although Ali and El-Achkar were friends, no evidence established that El-Achkar had any knowledge about the procurement of the subject insurance policy because he had not lived in the Bazzi household and lacked any relationship with Hala, Mariam, or the LLC. The trial court, did not clearly err in this regard and it correctly concluded that Sentinel failed to meet its burden to establish a right to rescind the policy as to El-Achkar.

Sentinel argues that the trial court erred by not adopting its two-factor test. Sentinel contends that trial courts may consider two factors alone for equities balancing determinations: (1) whether fraud or misrepresentation existed at the inception of the insurance contract that was material to Sentinel's decision to issue the policy, and (2) whether the facts established that the insurer failed to rescind and/or continued to collect premiums after it had actual knowledge of the true facts. We disagree.

The trial court correctly rejected the two-factor test advocated by Sentinel because it completely fails to take into consideration any of the equities as related to El-Achkar, the injured third party. Analysis of Sentinel's test reveals that, so long as an insurer may rescind a policy for fraud in the procurement by the insured, no other parties or equities need be considered and weighed. Sentinel's two-factor test does not comport with *Bazzi II*'s directive. Our Supreme Court held that the equities must be weighed as between an innocent insurer and an innocent injured third party to determine whether the insurer may rescind its policy in relation to claims made by the injured third party for coverage, despite the fact that the insurer may validly rescind the policy as between the insurer and the insured. The trial court correctly rejected Sentinel's two-factor test because it focuses solely on the insurer without any regard for the injured third party. Application of the five-factor test adopted in *Pioneer*, however, fulfills the *Bazzi II* directive and permits a just and equitable outcome. Therefore, we hold that the trial court did not abuse its discretion by denying Sentinel's motion to rescind the subject policy because Sentinel failed to establish its entitlement to rescission of the policy based upon a balancing of the equities as between itself and El-Achkar.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel