By order of September 12, 2017, the application for leave to appeal the January 19, 2017 judgment of the Court of Appeals and the application for leave to appeal as cross-appellant were held in abeyance pending the decision in Bazzi v. Sentinel Ins. Co. (Docket No. 154442). On order of the Court, the case having been decided on July 18, 2018, 502 Mich. 390, 919 N.W.2d 20 (2018), the applications are again considered. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the Court of Appeals opinion only to the extent it held that Farm Bureau was automatically entitled to rescission as a matter of law, and we REMAND this case to the Kent Circuit Court to determine whether rescission is available as an equitable remedy as between Farm Bureau and Robynn Rueckert. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. The motion to hear cross-appeal is DENIED.
We do not retain jurisdiction.
In Bazzi v. Sentinel Ins. Co. , 502 Mich. 390, 919 N.W.2d 20 (2018), this Court explained that "[w]hen a plaintiff is seeking rescission, 'the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks.' " Id . at 410, 919 N.W.2d 20, quoting Johnson v. QFD, Inc. , 292 Mich. App. 359, 370 n. 3, 807 N.W.2d 719 (2011). Furthermore, this Court explained, "[j]ust as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties." Id . at 411, 919 N.W.2d 20. Accordingly, consistent with Bazzi , I concur with the instant order remanding this case to the trial court "to determine whether rescission is available as an equitable remedy as between Farm Bureau and Robynn Rueckert" while denying leave to appeal in all *395 other respects.[1] I write separately only to discuss what I view as the need to establish a coherent and workable standard by which the trial court is to exercise its equitable discretion in "innocent-third-party cases." What follows represents the perspective of one Justice in this regard.
In the absence of such a standard-- not only, I would emphasize, in innocent-third-party cases but in every other type of civil and criminal case as well-- outcomes may be based solely upon the subjective determinations and the unconstrained exercises of discretion of the trial judge, and that is not the rule of law but the rule of judges. There must always be some clear standard, some ultimate inquiry by which the court must assess the evidence and determine whether it does or does not satisfy the standard. There must, in other words, be an applicable legal rule, and that is no less true in matters of equity than in any other realm in which the "judicial power" of our Michigan Constitution is exercised. Such rules, such standards, not only guide the trial court, but they also guide the parties in comprehending their rights and responsibilities and in marshalling their arguments, and the appellate court in meaningfully reviewing the trial court's judgments. See Warda v. City Council of City of Flushing , 472 Mich. 326, 339-340, 696 N.W.2d 671 (2005) ("Absent a comprehensible standard, judicial review cannot be undertaken in pursuit of the rule of law, but only in pursuit of the personal preferences of individual judges. The latter pursuit falls outside the 'judicial power' in Michigan."); Harmelin v. Michigan , 501 U.S. 957, 1007, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring) ("[B]road and unreviewed discretion exercised by sentencing judges leads to the perception that no clear standards are being applied, and that the rule of law is imperiled by sentences imposed for no discernible reason other than the subjective reactions of the sentencing judge."). Here, absent any principled standard, "it would seem that the uncertainty associated with subjecting insurers and insureds to the whims of individual judges and their various conceptions of 'equity' would increase overall insurance costs because insurers would no longer be able to estimate accurately actuarial risk." Devillers v. Auto Club Ins. Ass'n , 473 Mich. 562, 589 n. 62, 702 N.W.2d 539 (2005). In light of such concerns, I offer the following brief discussion grounded within our caselaw to guide the trial court's exercise of equitable discretion in cases involving innocent third parties. This discussion does not purport to establish mechanical principles for application but merely reasonably limited standards by which trial courts may assess *396 the evidence and render their best legal determinations concerning the extent to which such standards have been satisfied.
The ultimate issue in innocent-third-party cases, in particular those that concern both an innocent third party and an innocent insurer, pertains to which of these parties should bear the ultimate burden of the insured's fraud.[2] This essentially entails a determination as to which of the two parties is truly more or less "innocent," such that its interests should, or should not, prevail on the matter of rescission. This, in short, sets forth the legal standard -- what are the respective or comparative levels of genuine "innocence" of the two parties? This certainly will not always be an easy, or even a comfortable, determination-- choosing among innocent parties-- but nonetheless it is the determination necessitated by the circumstances of this class of cases and by Bazzi . Both parties are presumed to be fully "innocent," and this deserves to be recognized as a starting point for analysis; indeed, the array of relevant factors to be subsequently considered are largely of a character that inform to the best of the law's ability the court's exercise of judgment concerning the "equitable" relationship between the innocent parties and between the innocent parties and the responsible party. If the insurer is ultimately deemed more "innocent," the trial court should grant rescission; if the innocent third party is deemed more "innocent," then the trial court should decline to grant rescission with respect to the third party. And it is certainly possible to imagine instances in which there will be judicial determinations falling in the middle, i.e., that neither party is more or less "innocent" than the other party.
In this regard, because the burden of establishing a right to rescission lies with the party seeking rescission, Gardner v. Thomas R. Sharp & Sons , 279 Mich. 467, 469, 272 N.W. 871 (1937), the defrauded insurer bears the burden of establishing that rescission is warranted. Thus, where neither party is more or less "innocent" than the other, it would seem to be the case that the insurer has failed to satisfy its burden of proof and rescission would not be warranted with respect to the third party.
In resolving the ultimate issue in innocent-third-party cases, courts should consider the following nonexclusive list of factors, as applicable to the case at hand:
First, the extent to which the insurer, in fact, investigated or could have investigated the subject matter of the fraud before the innocent third party was injured, which may have led to a determination by the insurer that the insurance policy had been procured on a fraudulent basis. If the insurer could have with reasonable effort obtained information indicating that the insured had committed fraud in procuring the insurance policy, equity may weigh against rescission because the insurer may be deemed to have acted without adequate professional diligence in issuing and maintaining the policy.[3]
Second, the specific relationship between the innocent third party and the fraudulent insured. If the innocent third party possessed some knowledge of the fraud-- perhaps because of a familial or *397 other relationship-- equity may weigh in favor of rescission because that individual is seeking to recover from the insurer despite knowledge of the fraud.[4]
Third, the precise nature of the innocent third party's conduct in the injury-causing event. Where the innocent third party acted recklessly or even negligently in the course of the injury-causing event, equity may weigh in favor of rescission because the innocent third party could have avoided the injury by acting more prudently.[5]
Fourth, whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy. Such an avenue for recovery may include, for example, the assigned claims plan or health insurance. Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud.[6]
Fifth, whether enforcement of the insurance policy would merely relieve the fraudulent insured of what would otherwise be the insured's personal liability to the innocent third party. That is, whether enforcement of the insurance policy would subject the insurer to coverage for tort liability for an at-fault insured. In such a case, equity may weigh in favor of rescission because enforcement of the policy would transfer liability to the innocent third party from the insured who committed the fraud to the insurer that did not commit wrongdoing.[7]
In few cases will all of these factors be applicable; in some cases, none will be applicable; and in other cases, additional factors may be applicable. Furthermore, these and other factors should not be so rigidly or mechanically applied by merely "counting them" in terms of favoring one or the other side such that the ultimate decision-making standard is obscured, concerning the respective levels of "innocence" of the insurer and the innocent third party. In sum, I believe that trial courts must consider factors such as these in deciding innocent-third-party cases and that appellate courts should assess the trial court's exercise of equitable discretion against factors such as these, as well as, most importantly, against the proper legal standard. Pursuant to their constitutional exercise of the "judicial power," no court of *398 this state properly has free rein to unchecked or standardless exercises of "discretion"; rather, courts must restrict themselves to the application of the law, and equity, and their accompanying obligations. The factors identified here, and others that are similarly relevant to the standard set forth herein, will further our state's rule of law and afford reasonable protection to both innocent third parties and defrauded insurers against entirely arbitrary legal outcomes.

I acknowledge that this case may concern an alleged innocent misrepresentation, not necessarily a fraudulent misrepresentation. And Bazzi concerned an insurance policy that was procured in a "fraudulent manner." Bazzi , 502 Mich. at 412, 919 N.W.2d 20. Bazzi , however, should not be understood as limited to cases concerning a fraudulent misrepresentation. As the Court of Appeals observed here, " 'actionable fraud' is not the only kind of 'fraud or misrepresentation' " that may warrant rescission "if the contract had been procured thereby." Farm Bureau Gen. Ins. Co. of Mich. v. ACE American Ins. Co. , unpublished per curiam opinion of the Court of Appeals, issued January 19, 2017 (Docket No. 329585), p. 4. "Michigan's contract law recognizes several interrelated but distinct common-law doctrines-loosely aggregated under the rubric of 'fraud'-that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." Titan Ins. Co. v. Hyten , 491 Mich. 547, 555, 817 N.W.2d 562 (2012) (emphasis added). "These doctrines include actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." Id . Accordingly, even if this case concerns an innocent misrepresentation, Bazzi would still be applicable.

For the purposes of this discussion, I use the term "fraud" to broadly refer to cases concerning fraudulent misrepresentation, innocent misrepresentation, and fraudulent concealment. See note one of this statement.

See, e.g., Deitz v. Deitz , 298 Mich. 253, 258, 298 N.W. 522 (1941) ("The law assists those who are vigilant, not those who sleep upon their rights.") (quotation marks and citation omitted).

See, e.g., Kent v. Klein , 352 Mich. 652, 656, 91 N.W.2d 11 (1958) ("[C]hancery will not permit one to enrich himself at the expense of another by closing his eyes to what is clear to the rest of mankind. Equity, to paraphrase, regards that as seen which ought to be seen, and, having so seen, as done that which ought to be done.").

See, e.g., Andreae v. Wolgin , 257 Mich. 572, 579, 241 N.W. 876 (1932) ("An estoppel resting wholly on equity cannot be used to shift a loss from one careless person to another when the loss could not have happened without the earlier negligence of plaintiff, and the later negligence of defendant at most only contributed to the result.") (quotation marks and citation omitted).

See, e.g., Doering v. Baker , 277 Mich. 683, 688, 270 N.W. 185 (1936), quoting 1 Pomeroy, Equity Jurisprudence (3d ed.), p. 704 ("[E]quity 'will not suffer a wrong to go without a remedy.' "). See also Belcher v. Aetna Cas & Surety Co. , 409 Mich. 231, 251, 293 N.W.2d 594 (1980) ("[B]efore recovery of benefits may be obtained through an assigned claims plan, it must be determined that no personal protection insurance is 'applicable to the injury'.").

See, e.g., Titan Ins. Co. , 491 Mich. at 568-569, 817 N.W.2d 562 ("The no-fault act seeks to protect third parties in a variety of ways, including through tort actions, but it states nothing about altering the common law that enables insurers to obtain traditional forms of relief when they have been the victims of fraud.").