*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

UNPUBLISHED
June 15, 2023

        Plaintiff/Third-Party Defendant-
        Appellee,

v

No. 361298
Genesee Circuit Court
LC No. 19-113053-NF

ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY,

        Defendant/Third-Party Plaintiff-
        Appellant,

and

DEREK ALLEN GREGORY and BLAIR
GREGORY,

        Defendants/Third-Party Defendants.

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant/third-party plaintiff Esurance Property & Casualty Insurance Company
(Esurance) appeals by right the trial court's order granting summary disposition under
MCR 2.116(C)(10) in favor of plaintiff/third-party defendant Nationwide Mutual Fire Insurance
Company (Nationwide), and denying Esurance's request for summary disposition under
MCR 2.116(I)(2). We reverse and remand for entry of an order granting summary disposition in
favor of Esurance.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2015, defendant/third-party defendant Derek Gregory (Derek) was driving a truck
insured by Esurance and co-owned with his wife, defendant/third-party defendant Blair Gregory

(Blair).[1] The truck collided with Daniel Moore (Moore), who was riding a bicycle. Moore was injured in the accident. Moore was uninsured, and his claim for personal protection insurance ("PIP") benefits[2] was assigned to Nationwide via the Michigan Automobile Insurance Placement Facility (MAIPF).[3] Nationwide paid a total of $454,871.09 in medical expenses on behalf of Moore.

Nationwide subsequently filed this lawsuit against Moore and Esurance seeking to recover the PIP benefits it paid on Moore's behalf. Relevant to this appeal, Nationwide alleged that, under the no-fault act, MCL 500.3101 *et seq.*, Esurance, as the insurer of the truck, was higher in priority and therefore was required to reimburse Nationwide. Esurance subsequently filed a third-party complaint against Nationwide and the Gregorys, alleging that Blair had failed to disclose several material facts in her application for the insurance policy, including that she was married, that Derek occasionally drove the truck, that Derek had been in prior accidents involving alcohol, that Blair had been involved in prior accidents, and that Blair had filed prior claims with other insurance providers. Esurance argued that Blair's misrepresentations in her insurance application constituted fraud, warranted rescission of the policy, and prohibited Nationwide from recovering from Esurance as a higher-priority insurer. Nationwide filed a motion for summary disposition under MCR 2.116(C)(10), arguing that, even if Blair had committed fraud in her application, rescission was not warranted because Moore was an innocent third party and the balancing of the equities did not support rescission. Esurance responded that balancing the equities weighed in favor of rescission, and it in turn requested summary disposition under MCR 2.116(I)(2). The parties agreed that Moore was an innocent third party.

After a hearing on Nationwide's motion, the trial court issued a written opinion granting summary disposition in favor of Nationwide. The trial court first determined that there was no genuine issue of material fact regarding whether Blair had committed fraud in her application.[4] However, the trial court noted that rescission is not automatically applicable in the face of fraud. Rather, the trial court recognized that Moore was an innocent third party and that the court must therefore balance the equities to determine whether rescission was warranted. *Bazzi v Sentinel Ins*

---

[1] Derek and Blair are not parties to this appeal.

[2] As our Supreme Court noted in *Esurance Property & Casualty Ins Co v Michigan Assigned Claims Plan*, 507 Mich 498, 503 n 1; 968 NW2d 482 (2021) (citation and internal quotation marks omitted), "What are commonly called 'PIP benefits' are actually personal protection insurance (PPI) benefits by statute. MCL 500.3142. However, lawyers and others call these benefits PIP benefits to distinguish them from property protection insurance benefits."

[3] "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). Additionally, the MAIPF maintains the "Michigan Assigned Claims Plan (the MACP)." *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 265 & n 1; 951 NW2d 731 (2019). The MAIPF and MACP essentially exist in order to provide coverage for those who do not otherwise have automobile insurance. See *id*. at 273.

[4] The parties appear to agree on appeal that Blair's actions were fraudulent.

*Co*, 502 Mich 390, 409-410; 919 NW2d 20 (2018). In doing so, the trial court examined the list of five nonexhaustive factors set forth by Justice MARKMAN in his concurring statement in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903; 919 NW2d 394 (2018) (*Farm Bureau I*), which this Court adopted in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396; 952 NW2d 586 (2020). Analyzing each factor, the trial court determined that factors one and five should be scored neutrally, that factor two weighed against rescission, that factor three weighed slightly against rescission, and that factor four was neutral at best and arguably weighed in favor of rescission. The trial court held that Esurance had failed to show that rescission was warranted, and that Nationwide could stand in Moore's shoes and recover from Esurance on the basis of equitable subrogation. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted under MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415. This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416. MCR 2.116(I)(2) provides that, "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." We also review de novo the application of the doctrine of equitable subrogation. *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 509; 968 NW2d 482 (2021).

We review for an abuse of discretion a trial court's decision to grant or deny rescission of an insurance policy. *Pioneer*, 331 Mich App at 405. "An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes." *Id*. An error of law necessarily constitutes an abuse of discretion. *Id*.

## III. RESCISSION

Esurance argues that the trial court erred by granting summary disposition in Nationwide's favor. Specifically, Esurance contends that the trial court abused its discretion in concluding that the balance of the equities weighed against rescission. We agree.

As our Supreme Court explained in *Bazzi*:

> As a general rule, Michigan's no-fault insurance system is a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents. The Insurance Code has various requirements detailing the benefits that Michigan automobile insurance policies must provide, including PIP benefits, which are payable to or for the benefit of an injured person or, in the case of his death, to or for the benefit of his dependents. Because PIP benefits are mandated by statute under the no-fault

act, . . . the statute is the rule book for deciding the issues involved in questions regarding awarding those benefits. [*Bazzi*, 502 Mich at 399 (quotation marks and citations omitted; alteration in original).]

However, although the statutory language from the no-fault act plays an integral role, "automobile insurance contracts are governed by a combination of statutory provisions and the common law of contracts." *Id*.

PIP benefits are defined in MCL 500.3105. "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). If a person involved in an automobile accident does not have such insurance, he or she may still claim PIP benefits through the MAIPF and Michigan Assigned Claims Plan (MACP). See MCL 500.3172, as amended by 2012 PA 204; see also *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 273; 951 NW2d 731 (2019). At the time of accident in this case, MCL 500.3115 provided in relevant part:

(1) Except as provided in subsection (1) of section 3114, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) *Insurers of owners or registrants of motor vehicles involved in the accident*.

(b) Insurers of operators of motor vehicles involved in the accident. [Emphasis added.[5]]

Our Supreme Court has recently held "that an insurer who erroneously pays PIP benefits may be reimbursed under a theory of equitable subrogation when the insurer is not in the order of priority and the payments are made pursuant to its arguable duty to pay to protect its own interests." *Esurance*, 507 Mich at 503. In *Esurance*, the plaintiff, Esurance, had paid PIP benefits to Edwards, the claimant, but the insurance policy was later voided. *Id*. at 502-503. The Court held that "Esurance can stand in Edwards's shoes and pursue a claim for equitable subrogation because it was not in the order of priority and also was not a mere volunteer." *Id*. at 504 (quotation marks omitted).

---

[5] MCL 500.3115, as well as other provisions of the no-fault act, were amended by 2019 PA 21 effective June 11, 2019. In the trial court, the parties agreed on multiple occasions that, because the accident in this case occurred in 2015, the amended version did not apply. Therefore, Esurance has waived its assertion on appeal, which we in any event reject, that the recent no-fault amendments apply, see *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021), and we will apply the prior version. See *Howard v LM Gen Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 357110); slip op at 4 n 6 (holding that the prior version of the no-fault act applies to accidents that occurred prior to the 2019 amendment).

"Equitable subrogation is a flexible, elastic doctrine of equity" that is decided on a "case-by-case" basis. *Esurance*, 507 Mich at 510 (quotation marks and citations omitted). "Equitable subrogation is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." *Id*. (quotation marks and citation omitted). As our Supreme Court recently explained, the doctrine "is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." *Id*. (quotation marks and citation omitted). Furthermore, this "doctrine has two prongs: the subrogee acquires no greater rights than those possessed by the subrogor, and . . . the subrogee may not be a mere volunteer." *Id*. (quotation marks and citation omitted; alteration in original).

Our Supreme Court has held that "the plain language of the no-fault act does not preclude or otherwise limit an insurer's ability to rescind a policy on the basis of fraud." *Bazzi*, 502 Mich at 401. "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. at 409. "Although PIP benefits are mandated by statute, the no-fault act neither prohibits an insurer from invoking the common-law defense of fraud nor limits or narrows the remedy of rescission." *Id*. at 406.

However, the presence of fraud by the insured does not automatically entitle an insured to rescission. *Id*. at 408. When innocent parties are affected, rescission is left to the trial court's discretion, and "[w]hen a plaintiff is seeking rescission, the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." *Id*. at 409-410 (quotation marks and citation omitted). "[R]escission should not be granted in cases where the result thus obtained would be unjust or inequitable" or in cases "where the circumstances of the challenged transaction make rescission infeasible." *Id*. at 410 (quotation marks and citations omitted). As the *Bazzi* Court further explained:

> Moreover, when two equally innocent parties are affected, the court is required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . . [W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong. The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked. [*Id*. at 410-411 (quotation marks and citations omitted; alterations in original).]

Here, there is no dispute that Esurance is an innocent insurer and that Moore is an innocent third party.

In *Farm Bureau I*, our Supreme Court vacated this Court's decision "only to the extent it held that Farm Bureau was automatically entitled to rescission as a matter of law," and the Court remanded for the trial court "to determine whether rescission is available as an equitable remedy as between Farm Bureau and Robynn Rueckert." *Farm Bureau I*, 503 Mich at 903. Farm Bureau was the plaintiff insurance provider that sought rescission of an insurance policy with Robynn Rueckert, which Robynn had obtained through her husband, after Robynn was injured in a motor vehicle accident as a pedestrian. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 337 Mich App 88, 92-93, 95; 972 NW2d 325 (2021) (*Farm Bureau II*). In his concurrence *in Farm*

*Bureau I*, Justice MARKMAN set forth five nonexhaustive factors, which this Court adopted and condensed in *Pioneer*, for trial courts to consider when balancing the equities between innocent parties in the context of evaluating the availability of the equitable remedy of rescission. *Pioneer*, 331 Mich App at 410-411. These factors are:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id*. at 411.]

This Court has held that these factors are "not to be merely counted up" but are to be weighed to determine which innocent party should bear the burden of the insured's fraud. *Farm Bureau II*, 337 Mich App at 108. The burden is on the party seeking rescission to show that it is warranted. *Id*.

Esurance argues that the trial court balanced the equities between the wrong parties and, therefore, committed an error of law. According to Esurance, the trial court should have balanced the equities between *Nationwide* and Esurance, not between *Moore* and Esurance. We disagree. Caselaw clearly demonstrates that the equities must be balanced between the injured person and the party seeking rescission. See *Bazzi*, 502 Mich at 410-412 (remanding for the trial court to make such a determination between the *injured person* and the insurance company); *Farm Bureau I*, 503 Mich at 903 (remanding for the trial court to determine if rescission was proper between the *injured person* and the insurance company seeking rescission); *Farm Bureau II*, 337 Mich App at 100-107 (balancing the equities between the *injured person* and the insurance company seeking rescission); *Pioneer*, 331 Mich App at 412-415 (balancing the equities between the *injured person* and the insurance company seeking rescission). Esurance also argues that Nationwide should not have been able to inherit Moore's status and that Nationwide could not bring a claim for equitable subrogation. But our Supreme Court has already rejected Esurance's arguments and held that such insurers may be reimbursed via equitable subrogation for PIP benefits paid on behalf of an uninsured person. See *Esurance*, 507 Mich at 503-504. We therefore find no error of law in the trial court's identification of the parties between whom the equities should be balanced.

However, examining the five factors set forth by Justice MARKMAN, we conclude that the trial court erred significantly regarding factor four, and abused its discretion in its ultimate decision regarding rescission. We will briefly discuss each of the five factors.

The first factor is "the extent to which the insurer could have uncovered the subject matter of the fraud *before* the innocent third party was injured." *Pioneer*, 331 Mich App at 411 (emphasis added). The trial court determined that factor one was neutral. We agree. There was no evidence presented demonstrating that Esurance knew about this fraud before Moore was injured, and there was no showing of how Esurance could have been more diligent in reviewing the insurance application or in detecting the fraud. We reached a similar neutral conclusion in *Pioneer* based on

similar circumstances. See *Pioneer*, 331 Mich App at 412. We note that both parties miss the mark on this factor because they focus on whether each side could have investigated *after* Moore was injured. However, the factor clearly addresses the time period *before* Moore was injured, not afterward. See *Pioneer*, 331 Mich App at 411.

The second factor is "the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud." *Pioneer*, 331 Mich App at 411. The trial court determined that factor two weighed against rescission. We agree. There was no evidence of any relationship whatsoever between Derek, the fraudulently insured, and Moore, the innocent third party. Esurance mistakenly focuses on *Nationwide's* relationship with Moore, but the factor clearly demonstrates—as does caselaw—that the focus should be on Derek and Moore. See *Pioneer*, 331 Mich App at 412.

The third factor is "the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event." *Pioneer*, 331 Mich App at 411. The trial court determined that factor three weighed slightly against rescission. There was some evidence presented, in the form of deposition testimony by Blair and Derek, that it was Moore who ran his bicycle into the truck. However, as the trial court noted, the extent of Moore's injuries suggests that Moore did not simply run into the truck while it was stopped, but that the truck struck him. Moreover, Derek was allegedly intoxicated. The trial court noted that there was a factual dispute regarding the issue of who possessed the right-of-way. This factor arguably could have been scored as neutral, but, given the lack of positive evidence that Moore's conduct was "reckless or negligent," we conclude that the trial court's determination was within the range of principled outcomes. *Pioneer*, 331 Mich App at 405.

The fourth factor is "the availability of an alternate avenue for recovery if the insurance policy is not enforced." *Pioneer*, 331 Mich App at 411. The trial court determined that factor four was "neutral at best and arguably weighs in favor of rescission." In a footnote, the trial court stated that "factor four above was not scored for rescission because Moore's bills were paid." This statement suggests that the trial court in fact considered factor four as neutral or inapplicable. We conclude that the trial court erred in its conclusion. The fourth factor "considers the present situation" of the parties. *Id*. at 413. Moore had already received medical treatment and had that treatment paid for by Nationwide, which means that, not only did an alternative avenue for recovery exist, but recovery had already occurred; Moore's claims were assigned to Nationwide, who will continue to be his insurer if Esurance's policy is rescinded. Moreover, rescission will not result in any of Moore's claims for recovery being barred by the one-year-back rule. See *Pioneer*, 331 Mich App at 412-414. Notably, Pioneer's short-form description of factor four derives from Justice MARKMAN's more comprehensive description:

> Fourth, whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy. *Such an avenue for recovery may include, for example, the assigned claims plan or health insurance. Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission* because the insurer need not suffer loss because of the fraud. [*Farm Bureau I*, 503 Mich at 903 (MARKMAN, J., concurring) (emphasis added; footnote omitted)].

Justice Markman thus specifically indicated that the availability of recovery from the MACP—which in this case incontrovertibly exists through Nationwide—is a factor that may result in the overall weight of the equities favoring rescission. We conclude that this factor should have been weighed heavily in favor of rescission.[6]

Finally, the fifth factor is "a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party." *Pioneer*, 331 Mich App at 411. The trial court determined that factor five was neutral, and the parties do not dispute that conclusion.

In totality, we conclude that the trial court abused its discretion by holding that Esurance had failed to show that rescission was warranted. See *Farm Bureau II*, 337 Mich App at 108. Overall, factor one was neutral; factor two weighed against rescission; factor three weighed slightly against rescission, factor four weighed heavily in favor of rescission and factor five was neutral. Although two factors weighed to some degree against rescission and one factor weighed heavily in favor, again, the factors are "not merely to be counted up" but should be weighed to determine which innocent party should bear the burden of the insured's fraud. *Farm Bureau II*, 337 Mich App at 108; see also *Farm Bureau I*, 503 Mich at 903 (MARKMAN, J., concurring) (explaining that "[t]he ultimate issue in innocent-third-party cases" is which innocent party "should bear the ultimate burden of the insured's fraud"). In this case, Moore has already recovered benefits from an alternate source, and rescission will have no effect on that coverage. In other words, if the policy is rescinded, neither Esurance nor Moore would, in practical terms, bear the burden of Blair's fraud. Under these circumstances, the trial court's decision to deny rescission fell outside the range of principled outcomes. *Pioneer*, 331 Mich App at 405; see also *Farm Bureau I*, 503 Mich at 903 (MARKMAN, J., concurring) ("Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud.")

---

[6] Nationwide argues on appeal that "[a]ssigned claims are the insurers of last resort" and are not "a source of reinsurance for insurance companies looking to rescind without justified reason." We agree that nothing in the no-fault act or the statutory underpinnings of the MAIPF or MACP permits an insurer to rescind a policy "without justified reason." But in this case, Esurance sought rescission for a justified reason (fraud), which it established. In any event, the equity-balancing analysis is between the innocent insured and the innocent third party; Nationwide has not provided authority, and this Court has found none, indicating that factor four should also consider equity to the alternate source of recovery. We note that Justice MARKMAN's concurrence in *Farm Bureau I*, while specifically mentioning the MACP as an alternate source of recovery, did not contemplate consideration of the equity to the MACP. In any event, the MAIPF and MACP, and assigned insurers, are only required to cover claims that are properly made to the MAIPF; we see no reason why a rescinded policy should be analyzed any differently than the mere lack of a higher-priority insurer. See *Bazzi*, 502 Mich at 409 ("Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made.").

Reversed and remanded for the trial court to enter an order granting summary disposition in favor of Esurance. MCR 2.116(I)(2). We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra