*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLSTATE INSURANCE COMPANY,

Plaintiff-Appellee,

UNPUBLISHED
June 6, 2024

v

No. 365617
Wayne Circuit Court
LC No. 21-008294-NF

FREMONT INSURANCE COMPANY,

Defendant-Appellant.

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

In this insurance company priority dispute arising from a fatal motor vehicle accident, defendant Fremont Insurance Company appeals as of right the trial court's order granting summary disposition in favor of plaintiff Allstate Insurance Company. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of a June 5, 2020 fatal motor vehicle accident. On that date, 30-year-old Jeremy Cundiff was driving his moped when he was hit by an unknown vehicle. The driver of the other vehicle fled the scene. Cundiff was seriously injured and taken to the hospital by ambulance. The traffic crash report indicates that Cundiff was not wearing a helmet and was suspected of having consumed alcohol, although alcohol was not believed to be a contributing factor to the accident. Cundiff passed away as a result of his injuries on June 15, 2020.

At the time of the accident, Cundiff lived with his mother, Sharon Pabst. Cundiff had lived with Pabst for several years. Pabst testified that her home was Cundiff's main residence, although he would also stay with his sister, Jennifer Medrano, at times after having had an argument with Pabst. Cundiff received mail at Pabst's residence and had a key to the home. At the time of the accident, Medrano lived two houses away from Pabst. Medrano had moved in early 2020 to be closer to Pabst. Pabst owned a 2005 Jeep Cherokee and a 1998 Chevy Lumina that were insured with Fremont, and both vehicles were titled and registered in Pabst's name. Pabst testified that she made all of the payments on these vehicles and that Cundiff did not contribute any money toward these vehicles. She further testified that Cundiff never drove either of those vehicles and

-1-

that Cundiff only drove his moped. There was conflicting evidence whether Cundiff had a valid driver's license on the date of the accident.

Pabst had obtained a policy of insurance from Fremont in 2013. She testified that although she was not sure, she did not believe Cundiff was living with her in 2013. Pabst thought Cundiff was living with his sister at that time. Pabst explained that Cundiff's primary residence was with his sister for a period of approximately three or four years and that at some point, Pabst's home became Cundiff's main residence. Pabst testified that she first purchased the insurance policy by visiting a branch office in person and that she either went alone or with one of her daughters; the daughter who may have accompanied Pabst was not the daughter with whom Cundiff sometimes lived. Pabst also testified that Cundiff did not have any involvement in obtaining or renewing the insurance policy and that Cundiff did not accompany her to the branch office when she purchased the insurance. Pabst paid her insurance premiums via automatic payment from her bank account. As relevant to the events at issue in this case, Pabst renewed her policy with Fremont on March 15, 2020 for a term that ended on September 15, 2020. Pabst admitted that Cundiff was living with her at that time. However, she never informed Fremont that Cundiff resided with her.

Pabst explained:

> *Q.* Did you ever report your son to Fremont living with you at all?
>
> *A.* No, I did not. I didn't feel that it was a need to because he was driving a moped and it was only 50CC, and I was informed that you didn't need to have insurance on 50CC moped.
>
> *Q.* Who informed you of that?
>
> *A.* I just heard it somewhere.
>
> *Q.* But you don't know where?
>
> *A.* I don't know where.
>
> *Q.* But as we sit here today, to your knowledge, and your testimony, you never reported that Jeremy [Cundiff] was living with you to Fremont whatsoever?
>
> *A.* No, I did not because I didn't know how long he would be staying here because, like I said, he came and went. He was a free spirit. So he would come and stay, and then he would go to my daughter's and . . . [Ellipsis in original.]

On the 2013 insurance application, Pabst was asked if there were "any other drivers not listed." She indicated, "No." Pabst was the only listed driver on the application. The application also asked, "Any driver's license suspended or revoked?" Pabst answered, "No." On the declaration page for the policy period March 15, 2020 to September 15, 2020, Pabst was the only listed driver. There does not appear to be a list of household members on the declaration page. Pabst was aware that Cundiff's license had been suspended in 2018 for operating a vehicle while intoxicated and that he had a restricted license for a period of time before his license was reinstated

in 2019. However, Pabst testified that she never let Cundiff drive her vehicles and that he only drove his moped.

After the accident, Pabst filed a claim with Fremont on behalf of Cundiff as a resident relative living in her household. Fremont investigated the claim. Kathryn Dauser, a senior claims specialist for Fremont, testified at her deposition about her involvement in investigating Cundiff's claim. According to Dauser, Cundiff's operating-while-intoxicated conviction was discovered during the course of the investigation and that information was forwarded to the underwriting department. It was determined by underwriting that Cundiff was not an eligible driver as of June 25, 2018, when he was convicted of operating while intoxicated, and that he would not become eligible until June 25, 2021. Holly Robinson, a manager in Fremont's underwriting department, testified that Fremont was unable to write an insurance policy for an individual who was convicted of a "major violation," such as operating while intoxicated, for three years after the violation occurred.

Dauser explained that had Fremont known that Cundiff was in Pabst's household after that conviction, Fremont would not have renewed Pabst's policy and would not have insured her. As a result, Fremont rescinded Pabst's insurance policy because Pabst failed to disclose that Cundiff was a resident and driver in her household and Cundiff's driving record made him ineligible for insurance coverage through Fremont. Fremont sent a letter to Pabst informing her that this failure constituted a material misrepresentation of fact that entitled Fremont to rescind the policy and declare it "void at inception."

Fremont issued a check to Pabst for $3,167.77, which apparently constituted the return of all premiums paid on the policy since the period during which Pabst became ineligible for insurance as a result of Cundiff's operating-while-intoxicated conviction. Pabst testified that she received and cashed this check. Pabst applied for benefits on Cundiff's behalf through the Michigan Assigned Claims Plan, which assigned the claim to Allstate.

Allstate initiated this action against Fremont, seeking reimbursement for the personal protection insurance (PIP) benefits paid, or due to be paid, on Cundiff's behalf. Allstate also sought a declaratory judgment that Fremont was the higher priority no-fault insurer responsible for paying benefits on Cundiff's behalf.

Fremont moved for summary disposition under MCR 2.116(C)(10), arguing that Pabst admitted Cundiff lived with her, yet she failed to disclose Cundiff as another driver in her home. Furthermore, Fremont would not have issued the policy had it known about Cundiff and his operating-while-intoxicated conviction. Because Cundiff had a driver's license, he qualified as another driver in the household that Pabst was required to disclose, and her failure to do so constituted a material misrepresentation that justified rescinding the policy and declaring it void ab initio. Fremont additionally argued that equity weighed in favor of permitting Fremont to also rescind the policy as to Cundiff.

Allstate also moved for summary disposition under MCR 2.116(C)(10). Allstate argued that Fremont's post-loss cancellation of Pabst's policy was unenforceable. In the alternative, Allstate argued that if Fremont's post-loss actions were considered a rescission of the policy, then the equities weighed strongly against enforcing the rescission against Cundiff as an innocent third

party. Allstate alleged that it had paid $521,872.82 in benefits on Cundiff's claim, plus loss adjustment costs and expenses, for which Allstate sought reimbursement from Fremont.

After initially granting summary disposition in favor of Allstate and then vacating that ruling on reconsideration for reasons not relevant to resolution of this appeal, the trial court scheduled an evidentiary hearing to address the issues whether Fremont properly rescinded Pabst's insurance policy and, if so, whether the balancing of the equities weighed in favor of enforcing that rescission against Cundiff as an innocent third party. At the hearing, the parties' respective counsel presented oral arguments on the issue of balancing the equities to determine whether rescission of the insurance policy could be enforced against Cundiff as an innocent third party. The parties also incorporated their respective motions for summary disposition and attached exhibits.

The trial court issued a written opinion and order granting summary disposition in favor of Allstate pursuant to MCR 2.116(C)(10). The court applied the five factors set forth by then Chief Justice MARKMAN in his concurrence in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903; 919 NW2d 394 (2018) (*Farm Bureau I*), and adopted by this Court in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396; 952 NW2d 586 (2020). Applying those factors, the trial court concluded that the equities weighed against enforcing rescission of the insurance policy against Cundiff.

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). Summary disposition is proper under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leave[s] open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks and citation omitted; alteration in original).

> The remedy of rescission is "granted only in the sound discretion of the court." An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. An abuse of discretion necessarily occurs when the trial court makes an error of law. The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. [*Pioneer*, 331 Mich App at 405 (citations omitted).]

## III. ANALYSIS

An "insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018). "Rescission abrogates

a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. at 409. However, "[b]ecause a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court." *Id*. (quotation marks and citation omitted).

Here, Fremont sent a letter to Pabst informing her that Fremont was rescinding her insurance policy premised on Pabst's failure to disclose Cundiff's residency, coupled with Cundiff's driving record that made him ineligible for insurance coverage. Fremont argued that failure to disclose such information constituted a misrepresentation of material fact that entitled Fremont to declare the policy void at inception. Fremont argued in the trial court that the equities weighed in favor of enforcing rescission of the policy against Cundiff as well such that it was not liable for the PIP benefits related to Cundiff's injuries that were sought in this action.

The parties agree that in the context presented here, "rescission does not function by automatic operation of the law," and the trial court must "balance the equities" to determine whether the equitable remedy of rescission is available under the circumstances. *Id*. at 409-411 (quotation marks and citation omitted). "Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties." *Id*. at 411. "[W]hen two equally innocent parties are affected, the court is required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . ." *Id*. at 410-411 (quotation marks and citation omitted; ellipsis and second alteration in original). "[T]he party seeking rescission has the burden of establishing that the remedy is warranted." *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 337 Mich App 88, 100; 972 NW2d 325 (2021) (*Farm Bureau II*).

This Court has adopted the following framework for balancing the equities under *Bazzi*:

Justice MARKMAN recently articulated factors applicable to balancing the equities. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018) (MARKMAN, J., concurring). Justice MARKMAN described a "nonexclusive list of factors" the trial court should consider when resolving the issue of rescission. Reduced to their essence, five factors were identified and they address: (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. *Id*. We conclude that the factors outlined in Justice MARKMAN's concurrence to render a determination regarding the balance of the equities presents a workable framework as well as necessary guidance to the lower courts and the litigants, and therefore we adopt it as our own. [*Pioneer*, 331 Mich App at 411.]

-5-

"[T]he factors are not to be merely counted up, and the ultimate issue is which innocent party should bear the loss." *Farm Bureau II*, 337 Mich App at 108.

Here, the trial court applied the above framework, balanced the equities, and concluded that it would not be equitable to enforce rescission of the policy against Cundiff as an innocent third party.

Regarding the first factor, the trial court concluded that this factor weighed in favor of enforcing rescission against Cundiff. The court reasoned that although Fremont did not make any effort to discover Cundiff's resident relative status before the motor vehicle accident, there was no evidence of any "red flags" that arose prior to the loss that would have alerted Fremont to the possibility of a resident relative driver living with Pabst. The record supports the trial court's finding, and we are not left with a definite and firm conviction that a mistake has been made. *Pioneer*, 331 Mich App at 405.

The trial court concluded that the second factor, which considers the relationship between the fraudulent insured and the innocent third party, weighed against enforcing rescission against Cundiff because there was no evidence that Cundiff was complicit in Pabst's failure to disclose his residency with Pabst. The trial court cited the evidence that Pabst obtained the policy before Cundiff began living with her, that Cundiff was not involved in procuring or renewing the policy, that Pabst paid the premiums on the policy, that Pabst was the sole owner of the insured vehicles, and that Pabst did not let Cundiff drive her vehicles. The trial court acknowledged that Cundiff was Pabst's son, but the court observed that there was no evidence that Cundiff was aware of Pabst's failure to inform Fremont of Cundiff's resident relative status and that there was no evidence showing any involvement by Cundiff in matters pertaining to Pabst's automobiles or automobile insurance. The court's findings are supported by the record, and there does not appear to be any clear error. *Id.*

Regarding the third factor, which considers the nature of the innocent third party's conduct in the injury-causing event, the trial court concluded that this factor weighed against enforcing rescission against Cundiff. The trial court reasoned that there was no evidence that Cundiff was operating the moped in a negligent or reckless manner and the other driver fled the scene, which suggested culpability on the part of the fleeing driver. Although the police report indicates that it was suspected that Cundiff had consumed alcohol, the police report also indicates that this was not a contributing factor to the crash. The trial court's finding that there was no evidence that Cundiff was at fault in causing his injuries does not appear clearly erroneous. *Id.*

The trial court concluded that the fourth factor—whether the innocent third party has an alternative avenue for recovery—weighed in favor of enforcing rescission against Cundiff because Pabst was able to make a claim with the MACP on Cundiff's behalf. This finding also does not appear clearly erroneous on this record. *Id.*

Finally, the fifth factor is whether enforcing the insurance policy would merely serve to relieve the fraudulent insured of personal liability to the innocent third party by subjecting the insurer to coverage for tort liability for an at-fault insured. The trial court concluded that because enforcement of the policy in this case would not operate to relieve Pabst of what would otherwise be personal liability to Cundiff, equity weighed against enforcing rescission against Cundiff. This

conclusion constitutes an error of law because this Court has held that the fifth factor is "inapplicable" when, as is the case here, the fraudulent insured was not involved in the accident. *Farm Bureau II*, 337 Mich App at 107.

Recognizing that the "factors are not to be merely counted up, and the ultimate issue is which innocent party should bear the loss," *Farm Bureau II*, 337 Mich App at 108, we conclude that without the trial court's erroneous reliance on the fifth factor, the balance is—at *best* for Fremont—relatively even. Moreover, the insurance application only asked about "drivers" and did not specifically ask Pabst to list all household residents or all household residents of driving age. Considering the unrebutted evidence that Cundiff did not drive Pabst's vehicles that were insured by Fremont and that Cundiff only drove a moped[1] for which no-fault insurance was not required, see MCL 500.3101(3)(i)(*ii*); MCL 257.801e(1), it was not unreasonable for Pabst to believe that she had no duty to disclose Cundiff as a "driver" in her household even if, in Fremont's view, Cundiff hypothetically could have driven a motor vehicle. Under these circumstances, Fremont's ambiguous and vague language contributed to the confusion that led it to pursue rescission. The five factors set forth by Justice MARKMAN are not exclusive and it is proper to consider additional factors as relevant in a particular case. *Farm Bureau II*, 337 Mich App at 107-108.

Hence, Fremont failed to meet its burden to demonstrate that rescission was warranted as to Cundiff. *Id*. at 100; see also *Farm Bureau I*, 503 Mich at 905-906 (MARKMAN, C.J., concurring) ("In this regard, because the burden of establishing a right to rescission lies with the party seeking rescission, . . . the defrauded insurer bears the burden of establishing that rescission is warranted. Thus, where neither party is more or less 'innocent' than the other, it would seem to be the case that the insurer has failed to satisfy its burden of proof and rescission would not be warranted with respect to the third party."). "Balancing the equities is not concerned with assigning blame but, rather, with determining which of the innocent parties should bear a loss." *Pioneer*, 331 Mich App at 414. Accordingly, trial court did not abuse its discretion in prohibiting rescission as to Cundiff as an innocent third party, and it did not err in granting summary disposition in Allstate's favor.[2]

Based on this conclusion, it is unnecessary to address Fremont's additional argument that rescission was proper as to Pabst. Assuming without deciding that Fremont is correct, Cundiff was the only injured party on whose behalf PIP benefits were sought and, as already discussed, Fremont failed to meet its burden to show that the equities weighed in favor of enforcing rescission against him. Pabst was not injured and is not seeking PIP benefits for herself. The conclusion that rescission is unenforceable against Cundiff is dispositive under these circumstances.

---

[1] There was also evidence that he rode a bicycle at times.

[2] This Court may affirm the trial court's result on the basis of different reasoning. *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342 n 3; 948 NW2d 115 (2019).

Affirmed.  Appellee having prevailed in full is entitled to costs.  MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ Adrienne N. Young